## A02A2420. RIELS v. THE STATE.
(577 SE2d 88)

ELDRIDGE, Judge.

Charles Andrew Riels was charged with aggravated assault upon a peace officer (OCGA § 16-5-21); obstructing or hindering of a law enforcement officer (OCGA § 16-10-24); fleeing or attempting to elude a police officer (OCGA § 40-6-395); and criminal damage to property in the second degree (OCGA § 16-7-23). Riels entered a plea of guilty to the offense of criminal damage to property in the second degree. Following a jury trial, Riels was found guilty on the remaining counts. Riels appeals from the denial of his motion for new trial. In his sole enumeration of error, Riels contends that the evidence was insufficient to authorize his conviction for the offense of aggravated assault upon a peace officer. Finding no error we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that Corporal Michael James Saunders of the Gwinnett County Police Department was on routine patrol in the early morning hours on February 7, 2001, when he received a 911 dispatch relating that someone was breaking into a vending machine at the Chandler Creek Park Subdivision off McKendree Church Road in Gwinnett County. Corporal Saunders proceeded to the subdivision which was about 30 seconds away from his location. As Corporal Saunders slowed to make a left-hand turn into the subdivision, he saw a white 1991 Ford Escort station wagon which did not have its headlights on exit the subdivision at a high rate of speed, running the stop sign at the subdivision entrance.

Corporal Saunders turned on his blue lights and executed a traffic stop. Corporal Saunders directed Riels to exit the car and place his hands on top. After Riels complied, Corporal Saunders informed Riels he was under arrest for reckless driving. As Corporal Saunders attempted to take Riels into custody, Riels refused to place his left hand behind his back. During the ensuing struggle, Riels hit Corporal Saunders above the right eye.

Thereafter, Riels grabbed hold of Corporal Saunders' neck causing both of them to fall in the roadway. As Riels got up, Corporal Saunders grabbed Riels' jacket causing it to come up over Riels' head, covering his face. Riels continued to struggle with Corporal Saunders until he could reach the open driver's door of his car. Using the steering wheel for leverage, Riels was able to pull himself into his car.

Corporal Saunders testified that he saw what appeared to be a semi-automatic gun on the front passenger seat. Therefore, Corporal Saunders continued to try and remove Riels from the car and away

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

from the gun by attempting to pry Riels' hands off the steering wheel and pull him from the car. Corporal Saunders testified that he had one foot inside the vehicle, the other foot outside, and both hands on Riels when Riels started the car, put it in gear, and drove off. Corporal Saunders further testified that as Riels drove off, Riels' jacket was still over his face preventing him from seeing. Corporal Saunders demanded that Riels stop the car; however, instead of stopping, Riels "floored" the car, forcing Corporal Saunders to leap from the vehicle in an attempt to save himself as he was in "fear of his life" and thought Riels was trying to "kill him." Corporal Saunders testified that he received multiple injuries in that he had a knot above his right eye, abrasions of his left hand, and multiple bruises to the entire left side of his body. Corporal Saunders further testified that his leather jacket was scuffed badly, the flap on his handcuff pouch was ripped off and the button smashed flat, and that the button on his radio holster was scratched off and the bell keeper ripped off. After a high speed chase, Riels was finally apprehended and placed under arrest in Barrow County.

On appeal, Riels argues that the evidence showed neither an offensive act toward Corporal Saunders nor that he used his automobile in a manner likely to result in bodily injury. We disagree.

Contrary to Riels' argument, a person commits aggravated assault when he assaults "with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). "Aggravated assault committed by means of a deadly or offensive weapon, unlike aggravated assault committed with the intent to murder, rape, or rob, does not require a specific criminal intent." (Footnote omitted.) *Durrance v. State*, 250 Ga. App. 185, 186-187 (549 SE2d 406) (2001). Thus, "the state was required to prove only a general intent to injure." (Footnote omitted.) Id. at 186. "Although an automobile is not per se a deadly or offensive weapon, it may become one depending on the manner and means of the vehicle's use." *Spaulding v. State*, 185 Ga. App. 812, 813 (1) (366 SE2d 174) (1988); *Durrance v. State*, supra at 187. "The question of whether an automobile has been used in such a manner so as to constitute a deadly or offensive weapon is one for the jury to resolve." (Footnote omitted.) Id. at 187 (2).

In this case, the evidence, including Riels' testimony that he was aware that Corporal Saunders "had a hold of me with both hands" when he put the car in motion, was sufficient for a rational trier of fact to find beyond a reasonable doubt that Riels possessed the requisite criminal intent to commit aggravated assault.

*Judgment affirmed. Smith, C. J., and Ellington, J., concur.*

Decided February 3, 2003.

*Charles W. Wrinkle*, for appellant.

*Daniel J. Porter, District Attorney, Thomas N. Davis, Jr., Assistant District Attorney*, for appellee.