630 S.E.2d 817 (2006)
279 Ga. App. 219
COLE
v.
The STATE.
No. A06A0505.
Court of Appeals of Georgia.
May 5, 2006.
*819 Robert McLendon IV, William Hall, Blakely, for Appellant.
Joe Hendricks, Jr., District Attorney, Clifford Stitcher, Assistant District Attorney, for Appellee.
MIKELL, Judge.
A jury convicted Clarence Cole of two counts each of furnishing alcohol to an underage person, aggravated assault, and cruelty to children, and one count each of kidnapping, rape, sexual battery, aggravated assault with intent to commit rape and simple battery. The trial court sentenced him to life in prison plus 103 years. Following the denial of his third amended motion for new trial, Cole appeals, raising eight enumerations of error. Finding no basis for reversal, we affirm.
1. Cole contends that the trial court erred in denying his motion for a directed verdict of acquittal on the rape charge because there was no evidence of penetration.
The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve.[1]
So viewed, the evidence shows that on the evening of April 7, 1994, 15-year-old S.N. went to Cole's house to hang out with Cole's 16-year-old grandson and co-defendant, Rodney Abercrombie. After eating dinner at Cole's house, Cole and Abercrombie drove S.N. home. As they pulled up to the house, S.N.'s 15-year-old female cousin, M.D., was standing outside. One of the defendants said "I'd like to get some of that red-headed whore." The defendants then asked S.N. "if [he] could get them some . . . [p]ussy." When the car stopped in the driveway, M.D. approached and began talking to S.N. and the defendants. Cole offered her a glass of Dr. Pepper. M.D. took a sip from the glass, but then poured it out because it did not taste like Dr. Pepper. M.D. testified that after drinking from the glass, her vision became blurry and she began to feel dizzy, hot, and unsteady on her feet. When M.D. reached for the car door for support, Cole moved to the passenger seat and invited her to sit down in the driver's seat. The defendants then asked M.D. if she wanted to go to the store; she said no and started to exit the car. Abercrombie pushed her back into the front seat and Cole grabbed her arms. M.D. told the defendants she wanted to go home, but they told her they had a surprise for her and drove off with her in the car. Cole gave S.N. alcohol and then pulled M.D.'s head back and began pouring alcohol in her face and down her throat. Each time M.D. yelled that she wanted to go home, Cole poured more alcohol down her throat until she blacked out.
*820 The defendants drove to a store and then to Cole's house for more liquor, before proceeding to a secluded area near Piney Tower, where S.N. and Cole exited the car. At trial, S.N. testified that he was standing by the driver's side door when he observed Abercrombie "messing with [M.D.] . . . [,][f]eeling of her [b]reasts . . . [and] rubbing . . . [h]er vagina." Abercrombie's pants were unbuttoned and the zipper was down, and M.D.'s pants were halfway down her legs, around her knees, and her shirt was pulled up. According to S.N., the front passenger seat was reclined and Abercrombie was lying on top of M.D. with his penis in her vagina. Though she was "out of it[,]" S.N. heard M.D. saying, "please, please don't hurt me." After about ten to twenty minutes, Abercrombie got out of the car and Cole got in and started touching M.D.'s vagina and calling her "bitches and whore." Cole then told S.N. and Abercrombie to get away from the car and S.N. heard M.D. saying "please, please get off of me." S.N. could not see inside the car because Cole had closed the doors. When a truck pulled up to Piney Tower, the group drove away. A short time later, Cole stopped the car and accused M.D. of stealing $400 from him. Cole pointed a gun at M.D.'s throat and demanded she return his money. S.N. knocked the gun out of Cole's hand, but he retrieved it and aimed at it S.N. The defendants then argued about who was going to kill M.D.
The group returned to Cole's house. Cole parked near an old bus on his property and then Abercrombie and Cole kicked, hit, and cursed at M.D. When S.N. tried to help M.D. off the ground, Cole shoved him into a briar thicket. Cole then threw a mattress over M.D., kicked her repeatedly, and said, "[b]itch I will be back in the morning to get me some and finish you off." Cole then walked down to his house with S.N. and ordered S.N. to sleep on a couch in the house. When M.D. regained consciousness the next morning she felt "sore all over," including her breasts and vagina. She ran down to Cole's house to wake S.N. and then she and S.N. escaped when S.N.'s mother and M.D.'s grandmother came to Cole's house looking for them.
M.D. returned to S.N.'s house, took a bath, and went to bed. S.N. went to school, where he reported the incident to a teacher. M.D. was taken to the hospital for examination. The examining physician testified that M.D. had swelling and tenderness over her left jaw; two bloody bruises on the left side of her neck; a bloody bruise on the right side of her neck; a bruise adjacent to her left nipple; multiple bruises on her arms and legs, including contusions on her right inner thigh, right knee, and her left baby toe; and a deep contusion on the outside of her right eye. The physician also observed "petechia  sort of halfway between bruises and cuts . . . [or] bloody areas on the skin . . . to the left of her vagina."
A microanalyst at the Georgia Bureau of Investigation Crime Laboratory testified that M.D.'s clothing, including her underwear, contained fibers from the seat cover and carpeting of Cole's car. A pubic hair taken from the back seat of Cole's car matched M.D.
Cole did not testify at trial. Abercrombie denied the incident, claiming that he and Cole drove S.N. home after dinner and then returned home. Abercrombie testified that S.N. and M.D. made up the whole story and that the first time he met M.D. was when she and S.N. awoke him the next morning at 6:00 a.m. and said they were "just out goofing off."
"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. A person is concerned in the commission of a crime only if he: . . . (3)[i]ntentionally aids or abets in the commission of the crime."[2] The evidence was sufficient to authorize the jury's verdict that Cole is guilty, beyond a reasonable doubt, as a party to the crime of rape.[3] The indictment *821 charged both Cole and Abercrombie with the offense of rape, and the evidence showed that Cole forced M.D. to drink alcohol until she was unconscious, held her in the car against her will, and raised no objection to Abercrombie's actions. The record also shows that the trial court fully and accurately charged the jury on parties to a crime. Given S.N.'s testimony that Abercrombie was lying on top of M.D. with his penis in her vagina and that Cole raised no objection to his actions, the jury was authorized to convict Cole as a party to the crime of rape. The trial court correctly denied Cole's motion for a directed verdict of acquittal.
2. Cole argues that the trial court erred in admitting similar transaction evidence because the state proved the evidence by introducing only a certified copy of a prior indictment charging Cole with cruelty to children and terroristic threats for pointing a gun at Joe Ross and threatening to "blow [his] brains out if he did not fight." Cole challenged the evidence at a pre-trial hearing, but the trial court ruled that the evidence was admissible to show bent of mind. At trial, the state called Danny Payne, Chief Investigator of the Fannin County Sheriff's Department, to authenticate a certified copy of the prior indictment, but did not call any other witnesses. Payne identified Cole as the perpetrator of the prior crimes, but did not explain the facts surrounding the crimes. Defense counsel did not object. "[E]ven though a defendant challenges similarity at the pretrial hearing, he waives this ground by failing to assert it when the evidence is introduced at trial."[4] Accordingly, Cole has waived the issue for purposes of appeal.
3. In his next enumeration of error, Cole challenges the denial of his motion to suppress the evidence seized from his vehicle, arguing that the information provided the magistrate in support of the search warrant for the vehicle was insufficient because the investigating officer failed to inform the magistrate that information provided by S.N. in support of a first search warrant for Cole's residence proved false. This argument is meritless.
In reviewing a trial court's holding on a motion to suppress, we construe the evidence most favorably to uphold the trial court's judgment and do not disturb its findings if there is any evidence to support them. Our task on appeal is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed based on the totality of the circumstances. If the underlying affidavit relies on informants, the informants' veracity or reliability and their basis of knowledge are relevant considerations to determine if probable cause existed for the issuance of the warrant. And corroboration of the informants' information may provide a substantial basis for finding probable cause, despite deficiencies in the informants' veracity, reliability, or basis of knowledge.[5]
During the hearing on the motion to suppress, Dianne Davis, the investigator who applied for the first search warrant for Cole's residence, testified that S.N. told her that he had seen three guns in Cole's residence earlier in the day of the incident, and that Cole had pulled a gun and pointed it at him and M.D. Davis swore out an affidavit for the search warrant based on this information. Davis presented the affidavit to the magistrate and testified about her conversation with S.N. Davis also told the magistrate that S.N. had provided reliable information in a previous case involving stolen merchandise. Officers executed the search warrant but found no guns.
Davis testified that her investigation continued over the next month; that she conducted further interviews of S.N. and M.D., both of whom stated that they were in a two-door brown Honda the night of the incident; and that she drove S.N. by Cole's residence, *822 where he pointed out a two-door brown Honda. Based on this information, Davis and Payne swore out a second affidavit for a search warrant. This affidavit detailed the facts of the alleged crime and noted that the crime lab had found fibers on M.D.'s clothing that needed to be compared to the vehicle. Davis supplemented the second affidavit with testimony about her interviews with S.N. and M.D., and S.N.'s identification of a brown Honda on Cole's property car as the scene of the crimes.
Cole's argument fails for two reasons. First, as a victim and witness, S.N.'s identification of the brown Honda on Cole's property as the scene of the crimes was sufficient to establish probable cause that evidence of the crimes would be found in the vehicle. Second, even if the magistrate had been told that S.N.'s information about the guns proved false, Payne's affidavit and Davis' testimony provided the magistrate with a substantial basis for finding probable cause that crimes occurred in Cole's vehicle. Accordingly, the trial court correctly denied the motion to suppress.
4. Cole argues that the trial court erred in allowing the jury to view the recidivist count of the indictment during the guilt/innocence phase of the trial because it improperly placed his character in issue. Assuming, without deciding, that an unredacted copy of the indictment went out with the jury, we find that Cole waived this ground of appeal by failing to object at trial.[6]
5. Cole argues that the trial court's charge to the jury constituted reversible error by implying that the indictment was evidence. We disagree.
The trial court charged the jury "not to begin your deliberations until you receive the indictment and any other evidence which has been admitted in the case." "[A]n erroneous charge does not warrant a reversal unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered."[7] In looking at the entirety of the jury instructions, it is clear that no harm was committed, as the record reflects that the judge charged the jury several times that the indictment was not to be considered evidence. Moreover, "[a] mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error."[8] We do not believe there is a reasonable possibility that the court's apparent slip of the tongue misled the jury as to the role of the indictment.
6. Cole claims that the trial court improperly admitted hearsay statements of M.D., as recounted by S.N. The statements included M.D. telling Cole to "quit and stop it" and "please, please get off of me . . . and stop it" while she was alone with him in the car, and M.D. begging Abercrombie, "please, please don't hurt me" while he was lying on top of her in the car.
Contrary to Cole's argument, M.D.'s statements to Cole and Abercrombie on the night of the incident were not inadmissible. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."[9] M.D.'s statements during the sexual assaults were admissible res gestae evidence.[10]
7. Cole claims the court erred by excluding evidence that metabolites of marijuana *823 were found in M.D.'s urine. He claims the evidence was relevant to M.D.'s ability to recall the events of April 7, 1994. At a pretrial hearing, the trial court ruled that M.D.'s marijuana use was inadmissible character evidence, but could come in as res gestae evidence. Cole never sought to introduce the evidence at trial.
"Evidence of drug use is inadmissible when it is intended only to impugn a victim's character and has no relevance to any disputed issues in the case."[11] Evidence that M.D. may have used marijuana on the day of the attacks was not relevant to any disputed issue in this case. Contrary to Cole's claim, there was no dispute about M.D.'s ability to recall the events of the night as M.D. herself testified that she blacked out prior to the attacks and could not recall any events. The trial court did not err in excluding the evidence.
8. Cole argues that his trial counsel was ineffective on several grounds.
To establish ineffectiveness, a defendant must prove that trial counsel's performance was deficient and but for the deficiency a reasonable probability existed that the result of the trial would have been different. An error by counsel, even if professionally unreasonable, does not warrant reversal of a criminal conviction if it had no effect on the judgment. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[12]
(a) Cole correctly asserts that his trial counsel should have objected to the state's method of proving its similar transaction by introducing only a certified copy of Cole's prior convictions. Our Supreme Court has held that it is error for the state to prove a similar transaction by merely introducing a certified copy of a conviction without any independent evidence establishing the similarity between that crime and the crime charged.[13] Had trial counsel objected to the state's insufficient proof, the trial court would have been obligated to exclude evidence of Cole's prior conviction. However, "the erroneous admission of similar transaction evidence may be harmless if there is such overwhelming evidence of the defendant's guilt that it is highly probable that the error did not contribute to the guilty verdict."[14] In this case, the evidence of guilt was overwhelming.
(b) Given our holding in Division 3, that the search of Cole's vehicle was not unlawful, we reject Cole's claims that counsel was deficient in failing to renew his motion to suppress at trial and in failing to object to admission of the evidence seized from Cole's vehicle. "[F]ailure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance."[15]
(c) We also reject Cole's claim that counsel was ineffective for failing to object to the recidivist count going to the jury. "[I]t is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record."[16] In this case, the record is silent regarding whether the entire indictment was given to the jury. That the trial court instructed the jury not to begin deliberations until "you receive the indictment" does not change the result here. In any event, given our holding in Division 8(a), any error in disclosing Cole's prior convictions was harmless.[17]
*824 Judgment affirmed.
BLACKBURN, P.J., and ADAMS, J., concur.
NOTES
[1] (Citations and punctuation omitted.) Lunsford v. State, 260 Ga.App. 818, 819, 581 S.E.2d 638 (2003).
[2] OCGA § 16-2-20(a), (b)(3).
[3] See, e.g., Short v. State, 276 Ga.App. 340, 344(1)(b), 623 S.E.2d 195 (2005) (defendant, who observed co-defendant rape kidnapping victim but did nothing to stop it, was guilty of rape and aggravated sodomy); Carter v. State, 168 Ga.App. 177, 178(3), 308 S.E.2d 438 (1983) ("[a]lthough appellant was not [in pickup truck while co-defendant sodomized victim], his actions as an aider and abettor in the commission of that crime allow him to be charged with and convicted of the crime") (citation omitted).
[4] (Citations omitted.) White v. State, 265 Ga. App. 155, 158(2), 592 S.E.2d 920 (2004).
[5] (Punctuation and footnotes omitted.) Gunsby v. State, 248 Ga.App. 18, 19-20(2), 545 S.E.2d 56 (2001).
[6] See Bostick v. Ricketts, 236 Ga. 304, 305-306(1), 223 S.E.2d 686 (1976); Ricks v. State, 217 Ga.App. 666, 668(2), 458 S.E.2d 862 (1995); Pierce v. State, 199 Ga.App. 501, 502(2), 405 S.E.2d 325 (1991). Compare Evans v. State, 253 Ga. 331, 333, 320 S.E.2d 168 (1984).
[7] (Citations omitted.) Foote v. State, 265 Ga. 58, 59-60(2), 455 S.E.2d 579 (1995).
[8] (Citation omitted.) Lee v. State, 267 Ga.App. 834, 837(2), 600 S.E.2d 825 (2004). Compare Archie v. State, 137 Ga.App. 386, 387(4), 224 S.E.2d 64 (1976).
[9] OCGA § 24-3-3.
[10] See, e.g., Kelley v. State, 260 Ga.App. 238, 239, 581 S.E.2d 584 (2003) (victim's cry for help during offense was part of the res gestae); Denny v. State, 226 Ga.App. 432, 434(7), 486 S.E.2d 417 (1997) (same).
[11] (Footnote omitted.) Crowe v. State, 277 Ga. 513, 514, 591 S.E.2d 829 (2004).
[12] (Citation omitted.) Williams v. State, 271 Ga. App. 166, 167-168(5), 609 S.E.2d 122 (2004).
[13] See Williams v. State, 261 Ga. 640, 642(2)(c), 409 S.E.2d 649 (1991), citing Stephens v. State, 261 Ga. 467, 468-469(6), 405 S.E.2d 483 (1991).
[14] (Footnote omitted.) Swanson v. State, 269 Ga.App. 826, 605 S.E.2d 425 (2004).
[15] (Punctuation and footnote omitted.) Davis v. State, 273 Ga.App. 397, 402(5)(c), 615 S.E.2d 203 (2005).
[16] (Citation and punctuation omitted.) Melton v. State, 222 Ga.App. 555, 559(6), 474 S.E.2d 640 (1996). See also Washington v. State, 243 Ga. 329, 335(3)(d), 253 S.E.2d 719 (1979).
[17] See Favors v. State, 182 Ga.App. 179, 180(1), 355 S.E.2d 109 (1987).