## A06A1373. PRINGLE v. THE STATE.
### (635 SE2d 839)

MIKELL, Judge.

This is the second appearance of this appellant before this Court. In Case No. A06A1342, we affirmed Marion Pringle's conviction of the September 30, 2003, armed robbery, aggravated assault, and kidnapping of Savannah College of Art and Design ("SCAD") student Logan Petree. In that case, similar transaction evidence was introduced in the form of a nearly identical armed robbery committed against another SCAD student, Kevin Phillips, on October 8, 2003.

In the case at bar, Pringle appeals his conviction of ten offenses arising from the similar incident: aggravated assault (two counts), armed robbery, terroristic threats, simple battery, kidnapping, and possession of a firearm during the commission of a crime (four counts). He enumerates the same errors that he asserted in Case No. A06A1342; namely, that the trial court erred in denying his motion for a new trial based on the insufficiency of the evidence and the ineffectiveness of his trial counsel. We affirm.

1. We reject Pringle's challenge to the sufficiency of the evidence.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility.[1]

Viewed in its proper light, the evidence shows that at approximately 9:00 p.m. on October 8, 2003, Phillips parked in front of his house on Barnard Street and got out of the car. As he was removing items from the vehicle, a man, who Phillips later identified as Pringle, accosted Phillips, pointed a gun at him, swore at him, and told him to

---

[1] (Footnote omitted.) *Buruca v. State*, 278 Ga. App. 650-651 (629 SE2d 438) (2006).

get back into the driver's seat of the car. Pringle and two other suspects, later identified as Willie Jenkins and Kenneth Edwards, got in the car as well. Pringle sat directly behind Phillips and held a gun to Phillips' head during the entire 40-minute ordeal. The suspects told Phillips to drive and to keep his hands on the wheel. Jenkins snatched Phillips' wallet out of his pants, taking $8, two bank cards, and a credit card. The suspects told Phillips to drive to his bank and withdraw either $500 or $1,000 from his account. Phillips informed the suspects that he had only $58 in his account, and they began to swear at him. While en route to his bank's automated teller machine (ATM), Pringle asked Phillips whether he valued his life more than money. Phillips replied that he did, and Pringle said, "Well, the person before you didn't, and now they're dead." When he reached the ATM, Phillips was trembling so hard he entered his personal identification number (PIN) incorrectly twice. Then a car came up behind them, and the suspects ordered him to drive away. They threatened to shoot Phillips if he tried to escape. They ordered him to drive to another bank and use his credit card to make a cash advance, but he could not, because he did not know his PIN. The suspects became very angry and threatened to kill Phillips if he tried to signal for help. Finally, they reached an ATM where Phillips was able to withdraw $40. Still, the suspects ordered him to drive around. They continued to discuss killing Phillips. Pringle then ordered him to stop the car, got out, and pulled Phillips out of the car. Pringle frisked Phillips, found a dollar bill, insisted that he was lying about having more money, and slapped him. At the urging of the other two suspects, Pringle got back into the car, buckling Phillips into the driver's seat. They told him to drive to another bank to withdraw more money, but while the suspects were talking among themselves, Phillips quietly unlocked his door, unbuckled his seat belt, and, at a traffic light, fled from the vehicle to a nearby gas station, where he called the police.

The suspects did not wear masks or otherwise attempt to conceal their appearance, and Phillips was able to describe them to the police. Phillips later identified all three suspects from photographic arrays, and he identified Pringle at trial as the suspect who sat behind him in the car.

Officer Gregory Austin of the Savannah-Chatham Metropolitan Police Department arrived at the gas station and interviewed Phillips, who indicated that he had been robbed at gunpoint and had bailed out of his car. Austin testified that Phillips was visibly shaken and upset; he reported that the suspects said they would kill him if he did not do as he was told.

A description of Phillips' vehicle, the suspects, and their clothing was dispatched over the radio, and officers Randall Powell and Henry Brown responded to the "be on the lookout" (BOLO). The officers

observed the vehicle and initiated a traffic stop. Once they exited their respective police cruisers with guns drawn, however, the suspects rammed Phillips' vehicle into a pickup truck that was stopped at the traffic light, pushed it through the intersection, led the police on a high-speed chase, crashed into six vehicles, including a police car, as well as a motorcycle, and finally came to rest at the intersection of Abercorn Street and Stephenson Avenue. The right front tire of the car came off after it plowed into the back of the motorcycle driver. Powell testified that he assisted another officer in extracting Jenkins from the driver's seat. Powell observed Phillips' wallet and credit card in the front of the car and a gun in the back seat, where Pringle was sitting.

Detective Facquita Small-Lloyd, a forensics investigator, testified that she processed the scene. She collected ATM receipts from the vehicle, including one dated October 8, 2003, showing a balance of $58.55. Small-Lloyd also found a loaded gun on the floorboard of the rear passenger seat, and the gun and bullets were introduced into evidence. No fingerprints were found on the weapon.

Logan Petree testified as a similar transaction witness. His testimony mirrored that which he gave in Case No. A06A1342, and we do not recount it here.

Detective Lara Mohler testified that Pringle gave a statement after waiving his rights. Pringle told Mohler that the encounter with Phillips had been an aborted drug transaction and that Phillips "got hit in the head" because he was "bull-shitting" the suspects. Mohler told Pringle that his fingerprints had been found on the gun. He acknowledged that he had touched, and even shot, the weapon, but "just not today." Pringle denied that they had robbed Phillips, stating "If we were going to rob him, why would we let him get away without being shot? The gun had bullets in it." Pringle did not testify at trial.

(a) Pringle argues that his conviction of terroristic threats cannot be sustained because it was based on the victim's uncorroborated testimony. We disagree. While a person cannot be convicted of making a terroristic threat based "on the uncorroborated testimony of the party to whom the threat is communicated,"[2] it is also well established that

> the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the

[2] OCGA § 16-11-37 (a). A terroristic threat is a threat "to commit any crime of violence."

jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value.[3]

In the case at bar, Austin testified that Phillips was visibly shaken and had stated that the suspects threatened to kill him if he did not do as he was told. Mohler similarly testified that when she arrived at the gas station, Phillips was very shaken, scared, and jittery, and he told her that he feared for his life when he bailed out of his car. The officers' testimony amply corroborated Phillips' testimony, and the evidence was sufficient for a rational trier of fact to find Pringle guilty beyond a reasonable doubt of making terroristic threats.[4]

(b) As for Pringle's conviction of aggravated assault, armed robbery, simple battery, kidnapping, and possession of a firearm during the commission of a crime, we conclude that the evidence summarized above was sufficient for a rational trier of fact to find him guilty of the charged offenses beyond a reasonable doubt.[5]

2. Pringle next contends that the trial court erred in denying his motion for new trial on the basis of ineffective assistance of counsel. We disagree.

Generally, the burden is on the defendant claiming ineffectiveness of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[6]

Failure to satisfy either prong of this test is fatal to an ineffective assistance claim, and we need not address the deficient performance prong if the showing on the prejudice prong is insufficient.[7]

(a) Pringle first argues that his counsel rendered ineffective assistance by failing to file a motion for funds to hire an expert on the

---

[3] (Citation and punctuation omitted.) *Scott v. State*, 225 Ga. App. 729, 732 (3) (484 SE2d 780) (1997).

[4] See *Sprayberry v. State*, 241 Ga. App. 501, 503 (3) (527 SE2d 224) (1999).

[5] We note that the trial court's reference in its order denying the motion for new trial to the sufficiency of Pringle's guilt "as a party to the crime of felony murder" appears to be a typographical error.

[6] (Citation and punctuation omitted.) *Hudson v. State*, 218 Ga. App. 671, 672 (1) (462 SE2d 775) (1995).

[7] See *Brown v. State*, 225 Ga. App. 49, 51 (1) (b) (483 SE2d 318) (1997).

reliability of cross-racial eyewitness identification. This argument fails, however, because Pringle has not demonstrated that the outcome of his trial would have been different had counsel requested funds and called such a witness. To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant "is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of the case."[8] "Absent a proffer of what the testimony of his expert would have been at trial, [Pringle] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course."[9] Having failed to show prejudice, Pringle has not borne his burden of proving ineffectiveness on this ground.

(b) Pringle next alleges that trial counsel was ineffective because (i) he did not seek verification that funds had been withdrawn from the respective ATMs on the date of the crime; (ii) he did not seek to ascertain whether surveillance cameras at the banks "might" refute the state's evidence that Pringle was in the carjacked vehicle; and (iii) he did not investigate Pringle's claim that the incident was an aborted drug transaction. Pringle cannot show prejudice with regard to these assertions, however, because he made no proffer as to what any additional investigation by counsel would have revealed.[10] Pringle offered no more than "speculation regarding the content of such alleged potential favorable evidence, which is insufficient to sustain a claim of ineffective assistance of counsel."[11]

(c) Finally, Pringle argues that trial counsel was ineffective because he did not inquire into any possible relationship between the two victims that would suggest complicity to avoid being implicated in illicit drug activity. However, Pringle did not call the victims to testify at the hearing on the motion for new trial. Absent a proffer of favorable testimony, Pringle has again failed to show prejudice.[12]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED AUGUST 22, 2006.

*Gary M. Newberry*, for appellant.

---

[8] (Citation and punctuation omitted.) *Ware v. State*, 273 Ga. 16, 17-18 (3) (537 SE2d 657) (2000). Accord *Robinson v. State*, 278 Ga. 31, 35 (3) (b) (597 SE2d 386) (2004).

[9] (Citation and punctuation omitted.) *Cupe v. State*, 253 Ga. App. 851, 856-857 (3) (e) (560 SE2d 700) (2002).

[10] See *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

[11] *Hampton v. State*, 279 Ga. 625, 628 (5) (619 SE2d 616) (2005).

[12] See *Robinson*, supra.