A08A1318. HALL v. THE STATE.

(664 SE2d 882)

BLACKBURN, Presiding Judge.

Following a jury trial, Terry Hall (a/k/a Bernard McCoy) was convicted of rape,[1] kidnapping,[2] aggravated assault,[3] terroristic

---

[1] OCGA § 16-6-1 (a).

[2] OCGA § 16-5-40 (a).

[3] OCGA § 16-5-21 (a) (2).

threats,[4] and two counts of theft by taking (one felony and one misdemeanor).[5] He appeals his convictions and the denial of his motion for new trial, arguing that the trial court erred in (i) denying his motion for directed verdict of acquittal as to the charges of aggravated assault and terroristic threats; (ii) failing to merge his convictions of aggravated assault and theft by taking of a motor vehicle; (iii) failing to merge his convictions of theft by taking of a motor vehicle and theft by taking of the victim's purse; (iv) sentencing him to life without parole on the rape conviction; and (v) failing to find that his trial counsel rendered ineffective assistance. For the reasons set forth below, we affirm Hall's convictions but vacate his sentence on the misdemeanor theft by taking count and remand the case for resentencing.

"On appeal, the standard of review for denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction." (Punctuation omitted.) *Chambers v. State*.[6] In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*.[7] We do not weigh evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*.[8]

So viewed, the evidence shows that around 12:30 a.m. on June 25, 2002, J. V. exited a MARTA train at the Lindbergh station after having ridden the train from the airport. Upon reaching her car in the MARTA parking deck and opening the car's door, Hall tackled her from behind and pushed her face-down across the front seats. As J. V. struggled, Hall demanded her car keys. As she continued to struggle, Hall put his hands over her mouth and nose and around her neck and began choking her until she momentarily lost consciousness. When she awoke a few moments later, Hall forced J. V. into the car's trunk and drove out of the parking deck. After driving around for some time, Hall parked in a remote area behind a building, pulled J. V. out of the trunk, and raped her. He then forced her back into the trunk and began driving again.

A few hours later, Hall stopped a second time, opened the trunk, and demanded that J. V. tell him the PIN for her credit card so that he could use it to withdraw cash from her account. When she

---

[4] OCGA § 16-11-37 (a).

[5] OCGA § 16-8-2.

[6] *Chambers v. State*, 288 Ga. App. 550 (654 SE2d 451) (2007).

[7] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[8] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

responded that the credit card did not have a PIN, Hall accused her of lying and threatened to lock her in the trunk and set her car on fire if she did not give him the number. J. V. gave Hall the PIN to her bank card, but when he was unable to withdraw cash using that card, she convinced him to let her call her credit card company to set up an emergency PIN for her credit card account. Using that number, Hall made two large withdrawals from that account.

As daylight approached, Hall drove to an abandoned house, forced J. V. inside, and bound her with tape. He then told her that he was leaving but that he would return. Within minutes of Hall leaving, J. V. managed to free herself and exit the house. Eventually, she found a busy road and called the police from a convenience store. When the police arrived, J. V. was visibly upset and appeared to have several minor injuries, but she was able to give the police a description of her car and was also able to lead them to the abandoned house where Hall had left her. Later that day, the police spotted Hall driving J. V.'s car. Upon his arrest, Hall was found to be in possession of J. V.'s cell phone, her credit card, and over $400.

Hall was indicted on charges of rape, kidnapping, aggravated assault, terroristic threats, theft by taking of the victim's motor vehicle, and theft by taking of the victim's purse. At trial, J. V. recounted the entire incident, and a Georgia Bureau of Investigation forensics expert testified that DNA samples obtained from a physical examination of J. V. conclusively matched DNA samples taken from Hall after his arrest. After the State rested its case, Hall moved for a directed verdict of acquittal, but the court denied his motion. Hall testified in his own defense and denied all charges. At the trial's conclusion, the jury found Hall guilty on all counts of the indictment, and he was sentenced, under the recidivist statute (OCGA § 17-10-7), to life imprisonment without parole, plus 60 years. Subsequently, Hall obtained new counsel and filed a motion for new trial, which the court denied after a hearing. This appeal followed.

1. Hall contends that the trial court erred in denying his motion for directed verdict of acquittal on the aggravated assault charge. Based on the insufficiency of the evidence supporting this conviction, Hall argues that the State failed to prove that he intended to injure the victim, or that he choked her. He further contends that the State failed to prove that his actions were likely to result in serious bodily injury to the victim. We disagree.

OCGA § 16-5-21 (a) (2) provides in relevant part: "[a] person commits the offense of aggravated assault when he or she as-saults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . ." "The use of

hands to choke a victim satisfies the deadly weapon or dangerous object element of the aggravated assault statute." *Crider v. State.*[9]

In this matter, the indictment charged Hall with committing an "assault upon the person of [J. V.], by choking [J. V.] with [his] hands, a means likely to cause serious bodily injury when used offensively against a person. . . ." Contrary to Hall's contention, J. V. testified that Hall had a hand around her neck and was strangling her in addition to placing his hand over her mouth and nose. "[T]he victim's testimony on this issue was sufficient to sustain the conviction, and the jury was authorized to resolve the evidentiary conflicts in the victim's favor." *Moody v. State.*[10]

Hall's argument that the State failed to prove that he intended to injure the victim is also without merit. "Aggravated assault committed by means of a deadly or offensive weapon, unlike aggravated assault committed with the intent to murder, rape, or rob, does not require a specific criminal intent." (Punctuation omitted.) *Riels v. State.*[11] "[T]he state was required to prove only a general intent to injure." (Punctuation omitted.) Id. J. V.'s testimony that during the altercation with Hall, she could not breathe and, in fact, briefly lost consciousness, was evidence of such intent. Thus, the evidence was sufficient to support Hall's conviction of aggravated assault, and the trial court did not err in denying Hall's motion for directed verdict of acquittal on that charge. See *Moorer v. State.*[12]

2. Hall contends that the trial court erred in denying his motion for directed verdict of acquittal on the terroristic threats charge, arguing that the evidence was insufficient to support his conviction. Specifically, Hall contends that the State failed to prove that his threats were intended to terrorize the victim and failed to corroborate the victim's testimony. We disagree.

OCGA § 16-11-37 (a) provides:

A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another. . . . No person shall be convicted [of the offense] on the uncorroborated testimony of the party to whom the threat is communicated.

In this matter, the indictment accused Hall of committing terroristic threats specifically by threatening to burn J. V.'s car with her locked in the trunk. The State was therefore required to prove two

---

[9] *Crider v. State*, 246 Ga. App. 765, 768 (3) (542 SE2d 163) (2000).
[10] *Moody v. State*, 279 Ga. App. 440, 442 (1) (b) (631 SE2d 485) (2006).
[11] *Riels v. State*, 259 Ga. App. 420, 421 (577 SE2d 88) (2003).
[12] *Moorer v. State*, 290 Ga. App. 216, 219 (4) (659 SE2d 422) (2008).

elements: (1) that Hall made the alleged threat and (2) that he did so with the purpose of terrorizing her. *Nelson v. State.*[13] Here, J. V. testified that Hall threatened to lock her in the trunk and burn her car if she did not provide him with the PIN for her credit card account. "If properly corroborated, this evidence was sufficient to prove both elements of the charged offense beyond a reasonable doubt." Id.

Contrary to Hall's argument, J. V.'s testimony was corroborated despite the fact that no one other than J. V. heard Hall's threats. "[S]light circumstances may provide sufficient corroborating evidence. The quantum of corroboration need not in itself be sufficient [evidence], but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged." *Denson v. State.*[14] See *Pringle v. State.*[15] "Corroboration can consist of the victim's demeanor after the threat is communicated." (Punctuation omitted.) *Nelson,* supra, 277 Ga. App. at 97 (1) (c). Here, the police officer who responded to J. V.'s 911 call testified that she was upset and nervous, and that he tried to calm her down when he arrived on the scene. He also testified that J. V. had bruises and scratches on her body and that her clothes were dirty. In addition, the fact that J. V. called her credit card company to set up the emergency PIN, and the fact that Hall made actual withdrawals from that account, were evidence of Hall's threat. The officer's testimony and the records of her call to her credit card company amply corroborated J. V.'s testimony, and thus the evidence was sufficient for a rational trier of fact to find Hall guilty beyond a reasonable doubt of making terroristic threats. See *Pringle,* supra, 281 Ga. App. at 238 (1) (a); *Nelson,* supra, 277 Ga. App. at 97 (1) (c). Accordingly, the trial court did not err in denying Hall's motion for directed verdict of acquittal on this charge.

3. Hall contends that the trial court erred in failing to merge Count 3 (aggravated assault) and Count 5 (theft by taking of a motor vehicle), arguing that the offenses should have been merged as a matter of fact. We disagree.

"Offenses merge as a matter of fact pursuant to OCGA § 16-1-6 (1) if one of them is established by proof of the same or less than all of the facts required to prove the other." (Punctuation omitted.) *Bunkley v. State.*[16]

[13] *Nelson v. State,* 277 Ga. App. 92, 97 (1) (c) (625 SE2d 465) (2005).

[14] *Denson v. State,* 259 Ga. App. 342, 344 (1) (577 SE2d 29) (2003).

[15] *Pringle v. State,* 281 Ga. App. 235, 237-238 (1) (a) (635 SE2d 839) (2006).

[16] *Bunkley v. State,* 278 Ga. App. 450, 456 (2) (629 SE2d 112) (2006).

> In determining whether a crime is included in another, we generally apply the actual evidence test: If the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact.

(Punctuation omitted.) *Lewis v. State*.[17] Although a defendant may be tried for both offenses under such circumstances, he may not be convicted and sentenced for both. Id.

In this matter, Hall committed aggravated assault by choking J. V. with his hands in a manner that was likely to cause serious bodily injury. He committed theft by taking when he drove away from the MARTA parking deck in J. V.'s car without her permission.

> [I]t is obvious that the offenses involved here, although taking place at the same general time and location, are separate offenses in that each is established by proof of different facts and each offense is distinct as a matter of law, thus obviating any possibility of one's inclusion in the other.

*Jones v. State*.[18] Accordingly, the trial court did not err in sentencing Hall for both offenses. See id.; *Bunkley*, supra, 278 Ga. App. at 456 (2).

4. Hall contends that the trial court erred in failing to merge Count 5 (theft by taking of the motor vehicle) and Count 6 (theft by taking of the purse). The State concedes that the record is unclear as to whether the theft of the vehicle and the theft of the purse constituted two separate acts and therefore does not oppose the merger of these two convictions. We agree that it appears that J. V.'s purse was stolen as a result of its being inside her car when it was stolen. "Where one victim is robbed of multiple items in a single transaction, only one robbery is committed; thus, the facts in this case support only one conviction for theft by taking, and the trial court erred in failing to merge [Count 6 into Count 5]." (Footnote omitted.) *Jones v. State*.[19] Accordingly, we vacate the sentence imposed on Count 6 and direct the trial court to merge Count 6 into Count 5 during resentencing. See id.

5. Hall also contends that the trial court erred in finding that it was required by the recidivist statute (OCGA § 17-10-7) to sentence him to life without parole on Count 1 (rape), arguing that a life sentence was not mandatory. We disagree.

---

[17] *Lewis v. State*, 261 Ga. App. 273, 274 (1) (582 SE2d 222) (2003).

[18] *Jones v. State*, 279 Ga. 854, 858 (3) (622 SE2d 1) (2005).

[19] *Jones v. State*, 285 Ga. App. 114, 117 (6) (645 SE2d 602) (2007).

OCGA § 17-10-7 (c) provides in relevant part that

> ... any person who, after having been convicted under the laws of this state for three felonies ... commits a felony within this state other than a capital felony[20] must, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

Although this subsection of the statute alone does not prohibit the trial court's use of discretion in deciding what sentence within the statutorily-prescribed range to impose, Hall's sentence is also subject to OCGA § 17-10-7 (a),[21] which provides in relevant part that

> ... any person convicted of a felony offense in this state ... and sentenced to confinement in a penal institution, who shall afterwards commit a felony punishable by confinement in a penal institution, shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

"These subsections must be read together. If both apply, the trial court must apply them both." *Thompson v. State*.[22] See *State v. Jones*.[23] Additionally, under OCGA § 17-10-1 (a) (1), where the penalty imposed is life in prison, a trial court lacks discretion to probate or suspend any part of the sentence. See *Jones*, supra, 253 Ga. App. at 632; *Stone v. State*.[24] "It follows that when a three-time recidivist commits a fourth felony for which the maximum penalty is life in prison, the trial court lacks jurisdiction to sentence such felon to anything other than a life sentence without possibility of parole."

---

[20] Rape is not considered a capital felony for purposes of the recidivism statute. *Haslem v. State*, 160 Ga. App. 251, 253 (2) (286 SE2d 748) (1981).

[21] OCGA § 17-10-7 (a) provides for enhanced sentencing of repeat offenders where no other sentencing provision controls. *Mikell v. State*, 270 Ga. 467, 468 (510 SE2d 523) (1999). Cf. *Blevins v. State*, 270 Ga. App. 388, 395 (5) (606 SE2d 624) (2004); *Scott v. State*, 248 Ga. App. 542, 546 (2) (545 SE2d 709) (2001).

[22] *Thompson v. State*, 265 Ga. App. 696, 698 (2) (595 SE2d 377) (2004).

[23] *State v. Jones*, 253 Ga. App. 630, 632 (560 SE2d 112) (2002).

[24] *Stone v. State*, 218 Ga. App. 350, 351 (1) (461 SE2d 548) (1995).

(Punctuation omitted.) *Bharadia v. State*.[25]

Here, the State provided Hall with notice prior to trial that it would seek to have him sentenced as a recidivist pursuant to OCGA § 17-10-7 and within that notice listed the four felony charges on which he had previously been convicted. Indeed, Hall does not dispute the fact that he was provided notice or that he has at least three prior felony convictions. Thus, because Hall is a four-time recidivist and because the maximum sentence for rape is life in prison,[26] the trial court correctly sentenced him to serve life without the possibility of parole. See *Bharadia*, supra, 282 Ga. App. at 559 (5); *Thompson*, supra, 265 Ga. App. at 698-699 (2).

6. Hall further contends that the trial court erred in failing to find that he received ineffective assistance of counsel, arguing that his trial counsel performed deficiently in failing to file a demurrer to Count 3 (aggravated assault) of the indictment; failing to strike a prospective juror for cause during voir dire; and failing to object when the trial court found that it was required by statute to sentence him to life without parole.

To establish ineffective assistance of counsel under *Strickland v. Washington*,[27] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. *Mency v. State*.[28] "Making that showing requires that [Hall] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[29] We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous. *Rose v. State*.[30]

(a) Citing *Smith v. Hardrick*,[31] Hall contends that his trial counsel performed deficiently by failing to file a demurrer to Count 3 (aggravated assault) of the indictment because the allegations in that Count did not adequately track the language of OCGA § 16-5-21. This contention is without merit.

"The purpose of an indictment is to enable the defendant to prepare his defense intelligently and to protect him from double

---

[25] *Bharadia v. State*, 282 Ga. App. 556, 559 (5) (639 SE2d 545) (2006).

[26] See OCGA § 16-6-1 (b); see also *Coker v. Georgia*, 433 U. S. 584, 598-599 (IV) (97 SC 2861, 53 LE2d 982) (1977).

[27] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[28] *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).

[29] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).

[30] *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (573 SE2d 465) (2002).

[31] *Smith v. Hardrick*, 266 Ga. 54, 55 (2) (464 SE2d 198) (1995).

jeopardy." *State v. Barnett*.[32] OCGA § 17-7-54 (a) provides: "Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." "[A] criminal indictment which does not recite language from the Code must allege every essential element of the crime charged." *Smith*, supra, 266 Ga. at 54-55 (1).

Here, Count 3 of the indictment against Hall charges that he "did unlawfully commit an assault upon the person of [J. V.], by choking [J. V.] with accused's hands, a means likely to cause serious bodily injury when used offensively against a person. . . ." In contrast, the aggravated assault count in *Smith*, supra, 266 Ga. at 54, charged the defendant ". . . with the offense of [aggravated assault] for he did make an assault upon the victim by placing his hands around her neck and using his hands to apply pressure to her neck contrary to the law." (Punctuation omitted.) Thus, this count, unlike the count in *Smith v. Hardrick*, charged Hall with the offense of aggravated assault in the terms and language of OCGA § 16-5-21 and stated the offense so plainly that a jury might easily understand the nature of the aggravated assault charged. *State v. English*.[33]

Although the indictment does not state that Hall used his hands as deadly weapons, "this omission does not render the charge flawed." *English*, supra, 276 Ga. at 345 (1). In *Pye v. State*,[34] our Supreme Court explained that

> [t]he specific reference to "deadly weapon" in *Smith v. Hardrick* must be seen as a general reference to the aggravating circumstance in OCGA § 16-5-21 (a) (2), which also includes "any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

(Footnote omitted.) Here, the indictment sets forth both the unlawful assault and the aggravating circumstance. Furthermore, "it was unnecessary to allege apprehension by the victim as apprehension is not an essential element of an assault in which it is alleged that the defendant attempted to commit a violent injury upon the victim." (Punctuation omitted.) *English*, supra, 276 Ga. at 345 (1). Similarly, it was unnecessary to allege that Hall intended to murder, rape, or rob J. V. given the fact that such intent is not an element of OCGA § 16-5-21 (a) (2). See *Riels*, supra, 259 Ga. App. at 421.

---

[32] *State v. Barnett*, 268 Ga. App. 900, 900 (1) (602 SE2d 899) (2004).
[33] *State v. English*, 276 Ga. 343, 344 (1) (578 SE2d 413) (2003).
[34] *Pye v. State*, 274 Ga. 839, 841 (4) (561 SE2d 109) (2002).

Under these circumstances, any attempt by Hall's trial counsel to file a demurrer to Count 3 of the indictment would have been futile. "Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance." (Punctuation omitted.) *Cole v. State*.[35] Accordingly, the trial court did not err in denying Hall's motion for new trial on this issue.

(b) Hall also contends that his trial counsel performed deficiently by failing to strike for cause a prospective juror who exhibited a prejudice against him during voir dire. We disagree.

During voir dire, one of the members of the venire stated that her sister was a victim of date rape as a teenager, and therefore she strongly sympathized with women who have been traumatized by violent crimes. When asked by the trial court if this sympathy would interfere with her ability to be fair, the prospective juror responded, "I'm not sure. There would have to be strong evidence that the defendant was innocent, I think." After the trial court explained that the defendant was to be presumed innocent and that the State bore the burden of proving guilt beyond a reasonable doubt, the following exchange occurred:

> Q: Do you think you could accord this defendant that presumption of innocence going into this trial and see if the State can prove the charges they made?
> A: I suppose I could, yes.
> Q: Well, you're the only one that knows —
> A: Well, I guess —
> Q: — what's in your head and heart and mind. So I have to ask for a little more definitive answer than that? Would you do that?
> A: Yes, sir.

At the conclusion of voir dire, Hall's trial counsel used a peremptory strike to remove this venire member. During the hearing on the motion for new trial, Hall's trial counsel was asked why he had not removed the prospective juror for cause. He responded that he did not recall the specific conversation but that the only reason he would not have sought her removal for cause would have been because she eventually indicated that she could be fair.

To remove a venire member for cause, it must be shown that the prospective juror "had an opinion of [defendant's] guilt or innocence so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's

---

[35] *Cole v. State*, 279 Ga. App. 219, 225 (8) (b) (630 SE2d 817) (2006).

charge upon the evidence." (Punctuation omitted.) *Herring v. State*.[36] See *Somchith v. State*.[37] Here, the prospective juror ultimately stated that she could set aside her prejudice and determine Hall's guilt or innocence based on whether the State could prove the charges against him beyond a reasonable doubt. Accordingly, the trial court did not err in finding that Hall failed to overcome the strong presumption that trial counsel's use of a peremptory strike to remove the prospective juror fell within the broad range of reasonable professional conduct. See *Herring*, supra, 277 Ga. at 320 (6) (b).

(c) Hall further contends that his trial counsel performed deficiently by failing to object when the trial court found that it was required by statute to sentence Hall to life without parole. Given our holding in Division 5, supra, an objection to the trial court's sentence on the rape conviction would have been without merit. As previously noted, "[f]ailure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance." (Punctuation omitted.) *Cole*, supra, 279 Ga. App. at 225 (8) (b). Accordingly, the trial court did not err in denying Hall's motion for new trial on this issue.

*Judgment affirmed in part, sentence vacated in part and case remanded for resentencing. Miller and Ellington, JJ., concur.*

DECIDED JULY 8, 2008 — ■■■■■■■■■■

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.

---

[36] *Herring v. State*, 277 Ga. 317, 320 (6) (b) (588 SE2d 711) (2003).
[37] *Somchith v. State*, 272 Ga. 261, 262 (2) (527 SE2d 546) (2000).