**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 2, 2016**

# In the Court of Appeals of Georgia

A16A0685. KING v. THE STATE.

PHIPPS, Presiding Judge.

Following a jury trial, Terrance L. King was convicted of statutory rape, aggravated child molestation, and enticing a child for indecent purposes. King moved for a new trial, arguing that his trial counsel had rendered ineffective assistance. After a hearing at which counsel testified, the trial judge denied the motion. King appeals. For the following reasons, we affirm.

Viewed favorably to the verdict,[1] the evidence shows that on November 13, 2012, when M. P. was 15 years old, King picked her up around 6 a.m. on a school day and drove her to a hotel in Perry, Georgia, where he had already rented a room. M. P. testified that she and King, who was 32 years old and the pastor of a church M. P.

---

[1] See *Weeks v. State*, 316 Ga. App. 448, 449 (729 SE2d 570) (2012).

attended, had a "[b]oyfriend/girlfriend type of relationship." Once at the hotel, M. P. performed oral sex on King, and the two had vaginal intercourse. At some point during the day, King returned M. P. to her home.

King alleges that he received ineffective assistance of counsel at trial in that counsel failed to investigate the case properly. To prevail on this claim, King must show that trial counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different.[2] This showing requires King to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional conduct.[3] "[W]e accept the trial court's factual findings and credibility determinations [regarding the effectiveness of trial counsel] unless clearly erroneous, but we independently apply the legal principles to the facts."[4]

1. King first argues that counsel was ineffective in failing to obtain surveillance video of the hotel, which he asserts would have shown that the victim was not with King on the date in question.

---

[2] *Hall v. State*, 292 Ga. App. 544, 551 (6) (664 SE2d 882) (2008).

[3] Id.

[4] *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (footnote omitted).

At the hearing on the motion for new trial, King's trial counsel testified that he was the chief public defender in Houston County and that he had practiced law since 1993, including more than ten years with the public defender's office. Trial counsel was appointed on February 7, 2013, approximately three months after the events alleged in the indictment and ten months before trial.

King's appellate counsel questioned trial counsel as to what efforts he made to obtain video evidence from the hotel. Trial counsel responded that his assistant made "a lot" of phone calls to the hotel and that one of his investigators had visited the hotel in an attempt to obtain such a video.

Trial counsel stated further: "[T]hey did not have any video. I'm trying to remember if they had some and they had taped over them. I wasn't able to obtain any video." Trial counsel estimated that he initially requested a video in July 2013 because "we started . . . looking into trying to nail down particular dates that summer." According to trial counsel, part of the delay occurred because King was trying to provide his own records.

King contends that trial counsel was deficient in waiting at least four months after being appointed and six months from the date in question before attempting to obtain hotel video surveillance. King concludes that "[f]ailure to obtain these videos

3

gave [King] no way to present evidence showing he was alone when he checked in on November 13, 2013 [sic]."

In order to prevail on this claim, King "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[5]

Trial counsel had promptly filed discovery motions in February 2013, requesting that the state produce any "[p]hotographs and video/audio recordings," as well as all *Brady*[6] and *Giglio*[7] materials. In July 2013, trial counsel sent an investigator to the hotel to inquire about and request video surveillance footage.

Even assuming that video surveillance evidence existed in the first place, King offered no evidence that it still existed when trial counsel was appointed in February

[5] *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (104 SCt 2052, 80 LE2d 674) (1984)) (citation and punctuation omitted).

[6] *Brady v. Maryland*, 373 U. S. 83, 87 (3) (83 SCt 1194, 10 LEd2d 215) (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[7] *Giglio v. U.S.*, 405 U. S. 150, 154 (92 SCt 763, 31 LEd2d 104) (1972) (extending *Brady*, supra, to evidence relevant to credibility of prosecution witness).

4

2013, three months after the date in question. King argues that, due to limits on storage space, "this is evidence which will disappear soon after the incident unless action is taken to preserve the footage." However, King presented no evidence regarding the video storage space of this hotel (assuming the hotel had video surveillance) or the standard in the industry. We recognize that "counsel must prioritize his or her investigation and preparation for trial";[8] therefore, we cannot conclude that waiting several months before seeking video surveillance evidence directly from the hotel was deficient performance.[9]

Moreover, King has not shown prejudice. There was no evidence that the hotel had any video surveillance, much less whether the surveillance covered all entrances to the hotel. Thus, assuming trial counsel had been successful in obtaining video surveillance footage showing King arriving at the hotel alone, this would not

---

[8] *Chapel v. State*, 270 Ga. 151, 159 (510 SE2d 802) (1998).

[9] See id. ("[W]e cannot conclude that delaying some interviews [of alibi witnesses until two years after the murder] falls outside the wide range of reasonable professional assistance.").

5

necessarily contradict M. P.'s testimony.[10] This enumeration thus presents no basis for reversal.

2. King further asserts that counsel should have obtained cell phone records that would have shown he was on a call with another woman for several hours on the morning of November 13, 2012, when the sexual activity with M. P. allegedly occurred. King concedes that the phone records would not foreclose the possibility of the alleged sexual activity taking place but argues that, with this evidence, "a jury may have found the situation implausible."

"The test regarding effective assistance of counsel is to be not errorless counsel, and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance."[11] At the hearing on the motion for new trial, King's trial counsel conceded that both King and the woman told him they were on the phone at the time of the incident and stated that he "would have wanted phone records."

---

[10] See *Eason v. State*, 331 Ga. App. 59, 66 (4) (a) (769 SE2d 772) (2015) (conclusory statement that trial counsel should have conducted witness interviews and background investigations of witnesses and subpoenaed any videotapes from the crime scene was "not sufficient to support a claim that without counsel's alleged shortcomings, there is a *reasonable* probability that the outcome of trial would have been different") (emphasis in original).

[11] *Smith v. State*, 309 Ga. App. 241, 247 (3) (b) (709 SE2d 823) (2011) (punctuation and citation omitted).

Rather than exploring whether King and the woman were on the phone, counsel focused on trying to determine whether the woman was at the hotel with King on the day in question. Trial counsel testified:

> I subpoenaed [the woman] for trial. I didn't call her because she wasn't going to be able to nail down a date. She could testify that she met with [King] at the hotel and they had sex, but she couldn't testify about when that occurred and he stayed at the [hotel] on a number of dates, so the only thing that would have been bringing out is that he is a pastor . . . committing fornication. I don't think a jury would have . . . liked that, so it would have damaged his credibility without adding anything to the defense, that's why I didn't call her.

Having decided not to call the woman to the stand, counsel's strategy at trial was to try to show that King had already checked out of the hotel and could not have been there with M. P. on the morning of November 13, 2012.

It is not clear from the record why trial counsel did not subpoena the phone records that King now complains should have been obtained. However, even assuming that it was deficient performance, King has not shown prejudice. "Absent a proffer, defendant cannot meet his burden of making an affirmative showing that

7

specifically demonstrates how counsel's failure would have affected the outcome of his case."[12]

At the hearing on his motion for new trial, King did not proffer the phone records, offer any evidence of their content, or present the testimony of a witness who would have been able to authenticate such records. King has not shown a reasonable probability that the trial would have ended differently had counsel subpoenaed the phone records,[13] and the trial court thus did not err in denying King's claim of ineffective assistance of counsel.

*Judgment affirmed. Dillard and Peterson, JJ., concur.*

---

[12] *Hortman v. State*, 293 Ga. App. 803, 807 (e) (670 SE2d 99) (2008).

[13] *Curtis v. State*, 330 Ga. App. 839, 842-843 (1) (b) (769 SE2d 580) (2015).