## A03A1373. LOWERY v. THE STATE.
### (588 SE2d 276)

PHIPPS, Judge.

Rodney Lowery was tried by a jury and convicted of burglary, aggravated assault (two counts), possession of a firearm during the commission of a felony (three counts) and possession of a firearm by a convicted felon. On appeal, he claims that the trial court erred by denying his motion for a directed verdict. We find no error and affirm.

Lowery claims that the trial court should have granted his motion for directed verdict at the close of the state's case. The standard of review for denial of a motion for directed verdict is the same as for determining the sufficiency of the evidence to support a conviction.[1] Thus, we construe the evidence in favor of the jury's verdict and determine whether a rational trier of fact could have found Lowery guilty of the crimes for which he was convicted beyond a reasonable doubt.[2]

Deroddric Johnson testified that early in the morning of August 3, 2000, two men entered his house, came upstairs to the bedroom where he and Tony Mahone were sleeping, turned on the light and asked for money. Lowery, known to Johnson as "Rock," asked Johnson for money twice, uttered an obscenity and then shot him twice. Bonnie Troutman, who was with Lowery, pointed his gun at Mahone, who was sleeping. After Lowery shot Johnson, he and Troutman ran

---

[1] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).
[2] Id.

from the house. Johnson called the police and was taken to the hospital for treatment.

Johnson testified that both men had shirts tied around their faces during the incident. He recognized Troutman, whom he had known since elementary school, because Troutman was wearing the same clothes Johnson had seen him in earlier that day. He recognized Lowery, whom he had met earlier that week, by tattoos on his arm and a scar on the side of his face. At the hospital, Johnson told Detective Fletcher that the men who tried to rob him were called "Rock" and Troutman. Fletcher learned that "Rock" was Lowery and prepared a photographic lineup that included Lowery's photograph. From that lineup, Johnson identified Lowery as the person who had shot him.

Troutman testified that on August 3, he and Lowery "unlocked" the door to Johnson's house and went upstairs to his bedroom. He admitted that they both were armed with handguns and that Lowery tried to get money from Johnson. Although Troutman denied firing his weapon, he testified that three or four shots were fired and that they must have come from Lowery's gun.

Lowery claims that the testimony of both Johnson and Troutman contained numerous inconsistencies and was unbelievable. But we need not resolve those conflicts or decide whether the witnesses were credible. It is the jury's role to resolve conflicts in trial testimony and to assess the credibility of witnesses.[3]

Lowery points out that two witnesses, men who had been in the local jail with him, testified that Johnson had told them that he did not know who had shot him. Presumably, Lowery is arguing that the testimony of those disinterested witnesses should carry more weight than the testimony of the victim and the co-defendant. We do not weigh the evidence, but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[4] We find that it is and affirm.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 30, 2003.

*Renate D. Moody*, for appellant.
Rodney Lowery, *pro se.*

---

[3] *Berry v. State*, 268 Ga. 437, 438 (1) (490 SE2d 389) (1997).
[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).

*Howard Z. Simms, District Attorney, Sandra G. Matson, Donna J. Culpepper, Assistant District Attorneys*, for appellee.