## A06A0278. MOODY v. THE STATE.

(631 SE2d 485)

RUFFIN, Chief Judge.

A jury found Jermaine Moody guilty of one count each of kidnapping, aggravated assault, battery, and tampering with evidence. The jury found him not guilty of second counts of kidnapping and aggravated assault. Moody appeals, asserting that the trial court erred in failing to direct a verdict for him as to kidnapping and aggravated assault. He also challenges several evidentiary rulings. Finding no error, we affirm.

1. In reviewing the denial of a motion for directed verdict, "we construe the evidence in favor of the jury's verdict and determine whether a rational trier of fact could have found [the defendant] guilty of the crimes for which he was convicted beyond a reasonable doubt."[1] Viewed in this manner, the evidence shows that while the victim was walking home on February 14, 2003, Moody drove up beside her in a blue Buick and ordered her into the car. The victim did not know Moody and considered running, but she entered the car when he pulled a gun.

According to the victim, Moody drove her to various locations, including a hotel and a house, where he met with several individuals and appeared to engage in drug transactions. The victim further testified that Moody sexually assaulted her, then knocked her unconscious. When she awoke inside the Buick, it was parked outside a house and Moody was talking to his wife, Akilah Woolfolk.

Woolfolk asked Moody why the victim was still with him and stated, "[y]ou need to get rid of her." Moody drove away with the victim, then returned to the house sometime later. At that point, the victim managed to get out of the car and run, but Moody caught her, slammed her head to the ground, and choked her until she passed out. Moody placed her in the trunk and drove away. In an effort to get out of the trunk, the victim began pulling wires, and the trunk eventually "popped" open. She jumped out and ran to a nearby house.

When the homeowners found the victim outside their house, she was disoriented, wearing only ripped underwear, and covered in blood. They called the police and also requested an ambulance. An emergency room doctor who treated the victim after the incident testified that, among other things, she had bruising on her face and sub-conjunctive hemorrhages in her eyes. The doctor testified that such hemorrhaging results from increased pressure in the eyes and can be caused by strangulation. He also noted that the victim had bruising on her neck.

---

[1] *Lowery v. State*, 263 Ga. App. 450 (588 SE2d 276) (2003).

The day after the incident, Moody and Woolfolk entered a police station and turned in a driver's license and a pair of shoes belonging to the victim. Moody told police that he discovered the victim walking on the road, bleeding, wearing a shirt and underwear, and carrying her pants and shoes. According to Moody, he gave her a ride and intended to drive her to the hospital, but she became combative and jumped out of the car. Moody later admitted that he struck her several times "in self-defense." Woolfolk told police that Moody placed his clothes and the victim's clothes in their washing machine that night.

The police subsequently searched a blue Buick found outside of Woolfolk's home and discovered multiple spots of a red substance that field tested positive for blood. DNA analysis of blood recovered from the front seat headrest and the trunk revealed it to be the victim's blood.

Solomon Miles testified on behalf of Moody that shortly before Moody's arrest, Moody and the victim came to his house and smoked marijuana. According to Miles, Moody did not force the victim to smoke, and she was not frightened or under duress. He further testified that Moody did not appear to be holding her against her will. Moody also presented expert testimony that the trunk of the type of car he was driving could not be opened from the inside.

(a) *Kidnapping*. The indictment charged Moody with one count of kidnapping by abducting the victim and holding her against her will, and one count of kidnapping by abducting her, holding her against her will, and causing her bodily injury. The jury found Moody not guilty of the first count, possibly concluding, based on Miles' testimony, that the victim initially was with Moody voluntarily. The jury, however, found Moody guilty of the second count, kidnapping with bodily injury.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against [her] will."[2] A greater penalty applies to an individual convicted of this offense if the person kidnapped receives a bodily injury during the kidnapping.[3] In this case, the victim testified that Moody grabbed her by the neck when she tried to leave his presence, strangled her to the point that she passed out, and put her in the trunk of his car. The State also presented evidence that she suffered significant injuries, including bruising and eye hemorrhaging, and was found covered in blood shortly after the incident. Given

[2] OCGA § 16-5-40 (a).
[3] See OCGA § 16-5-40 (b); *Bailey v. State*, 269 Ga. App. 262 (1) (603 SE2d 786) (2004).

this evidence, the jury was authorized to find Moody guilty of kidnapping with bodily injury, even if it concluded that the victim initially was with Moody voluntarily.[4]

On appeal, Moody argues that the State's kidnapping case was based on the victim's "uncorroborated testimony," which was "fraught with inconsistency." But the jury, not this Court, is authorized to resolve conflicts in trial testimony and to assess witness credibility.[5] And "[t]he testimony of a single witness is generally sufficient to establish a fact."[6] Moreover, even if corroboration were needed, significant evidence — such as the blood found in Moody's car, the medical testimony regarding the victim's injuries, and evidence of the victim's physical and mental state shortly after the attack — corroborated the victim's testimony. Finally, although Moody's acquittal as to the first kidnapping count indicates that the jury did not entirely believe the victim, "[a] jury is entitled to believe part of a witness' testimony and discount or disregard the rest of the witness' testimony."[7]

(b) *Aggravated Assault.* The State indicted Moody on two counts of aggravated assault. The first charged that Moody assaulted the victim with a handgun, and the second alleged that he assaulted her "with the intent to murder by placing [his] hands on her neck and choking her." As with the kidnapping charges, the jury found Moody not guilty of the initial assault with a handgun, but guilty of aggravated assault by choking the victim.

Moody first claims that the guilty verdict cannot stand because other evidence conflicted with and "refuted" the victim's testimony that Moody strangled her. Again, however, the victim's testimony on this issue was sufficient to sustain the conviction, and the jury was authorized to resolve the evidentiary conflicts in the victim's favor.[8]

Moody also contends that the State presented no evidence that he intended to murder the victim. Under OCGA § 16-5-21 (a) (1), "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith intent to murder." The issue of intent is a factual question for the jury, and "[i]t may be found upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[9]

---

[4] See OCGA § 16-5-40; *Huntzinger v. State*, 275 Ga. App. 267, 268 (1) (620 SE2d 488) (2005); *Stubbs v. State*, 220 Ga. App. 106, 107-108 (2) (469 SE2d 229) (1996).

[5] See *Lowery*, supra at 451.

[6] OCGA § 24-4-8. See also *Owens v. State*, 271 Ga. App. 365, 367 (1) (609 SE2d 670) (2005).

[7] *Shue v. State*, 251 Ga. App. 50, 51 (1) (553 SE2d 348) (2001).

[8] See *Owens*, supra; *Lowery*, supra.

[9] (Punctuation omitted.) *Thomas v. State*, 273 Ga. App. 357, 359 (1) (615 SE2d 196) (2005).

Construed favorably to the verdict, the evidence shows that Moody strangled the victim after his wife told him to get rid of her. His conduct caused the victim to lose consciousness and created such pressure in her neck that both eyes hemorrhaged. Moody then threw her into his car trunk and drove away. Under these circumstances, the jury was authorized to find that Moody intended to murder the victim.[10]

2. Moody claims that the trial court erred in admitting certain photographs of the victim's injuries. The record shows that the State introduced, without objection, photographs of the victim taken on the morning after the assault. The State then sought to introduce photographs of the injuries taken two days later. Moody objected, arguing that jurors had already seen pictures of the injuries and that these additional photographs were intended "to inflame the jury." In response, the State argued that the later photographs helped to demonstrate the extent of the victim's injuries by showing how the injuries appeared several days after the assault.

The trial court admitted the photographs, but cautioned jurors not to place extra emphasis on them and stated that the second series was admitted only to show how the injuries manifested themselves over time. We find no error. "The admission of photographs into evidence is a matter within the discretion of the trial court."[11] As argued by the State, the subsequent photographs helped show the extent of the victim's injuries. And those injuries were relevant to the charges. Particularly given its limiting instruction, the trial court did not abuse its discretion in admitting the photographs.[12]

3. Moody next argues that the trial court erred in excluding testimony from his expert in automobile mechanics regarding an experiment conducted on Moody's car. Moody asserted at trial that the expert attempted to get out of the trunk in question, but was unable to do so. The trial court permitted the expert to discuss the mechanics of the car trunk, but refused to admit evidence of the experiment.

"[A] practical demonstration of a point in issue, . . . when made under similar conditions and directly illustrating a material issue[,]

---

[10] See *Zilinmon v. State*, 234 Ga. 535, 538 (8) (216 SE2d 830) (1975); *Haygood v. State*, 154 Ga. App. 633, 635 (4) (269 SE2d 480) (1980). Moody's reliance on *Smith v. Hardrick*, 266 Ga. 54 (464 SE2d 198) (1995), is misplaced. The *Smith* decision addresses the allegations necessary in an indictment, not the sufficiency of the evidence supporting an aggravated assault conviction. See id. at 55-56 (2), (3).

[11] (Punctuation omitted.) *Watkins v. State*, 248 Ga. App. 412, 413 (2) (a) (546 SE2d 363) (2001).

[12] See id. at 413-414; *Sullivan v. State*, 242 Ga. App. 613, 614 (2) (530 SE2d 521) (2000).

may be admitted in the sound discretion of the trial judge."[13] Moody offered no evidence that his expert conducted the experiment under conditions similar to those facing the victim. For example, he did not show that, at the time of the experiment, the Buick was in the same or similar condition as it was in February 2003. And the State noted, without dispute, that the car had been in Woolfolk's possession during the several years prior to trial. Accordingly, the trial court did not abuse its discretion in excluding the evidence.[14]

4. Moody also argues that the trial court erred in allowing the victim to present hearsay testimony about the hemorrhaging in her eyes. The victim testified that she thought her eye injuries "came from the strangulation," when Moody "[c]ut off [her] circulation." Moody objected that the victim was not qualified to give medical testimony. The court allowed the testimony, but cautioned the jury that the testimony should not be viewed as medically accurate. The victim later testified that someone at the hospital had told her that strangulation caused the injury.

Moody argues that the victim's hearsay testimony should have been excluded. To secure reversal, however, an objector "generally must establish error triangulation, i.e., (1) error, (2) contemporaneous objection, and (3) harm flowing from the error."[15] Moreover, "failure to make a contemporaneous objection on the specific ground urged on appeal results in waiver."[16] The record shows that Moody did not object to the victim's testimony as hearsay. Accordingly, this objection has been waived for purposes of appeal.[17]

Furthermore, even if the trial court erred in admitting the evidence, it was cumulative of testimony by the emergency room doctor, who stated that the type of hemorrhaging suffered by the victim can result from strangulation. Under these circumstances, the victim's testimony was harmless and provides no basis for reversal.[18]

5. Finally, Moody argues that the trial court erred in restricting his cross-examination of the victim regarding her work history and prior drug use. The victim testified that at the time of the incident, she worked for the Clayton County Board of Education. Moody attempted to impeach this testimony with a copy of her work history that purportedly showed that she was terminated before the assault.

---

[13] *Ruger v. State*, 263 Ga. 548, 550 (2) (b) (436 SE2d 485) (1993).

[14] See id.; *Kilgore v. Gold Kist, Inc.*, 224 Ga. App. 394, 394-395 (480 SE2d 391) (1997).

[15] *Smith v. State*, 273 Ga. App. 107, 111 (3) (614 SE2d 219) (2005).

[16] Id.

[17] See id.; *Carreno v. State*, 272 Ga. App. 229, 231 (3) (612 SE2d 62) (2005).

[18] See *Dunn v. State*, 277 Ga. App. 209, 210 (2) (626 SE2d 174) (2006) ("[E]vidence which is cumulative of other legally admissible evidence of the same fact, renders harmless admission of incompetent evidence.") (punctuation omitted).

The trial court excluded the work history as irrelevant, but permitted Moody to question the victim about her employment.

A trial court has discretion to limit cross-examination into areas that are irrelevant or immaterial to the issues being tried.[19] And while a witness may be impeached about collateral issues indirectly material to the case, she " 'may not be impeached because of a discrepancy as to a wholly immaterial matter.' "[20] Given the circumstances of this case, the trial court did not abuse its discretion in excluding the work history as irrelevant.[21]

Moody also sought to impeach the victim about her prior drug use. The victim admitted that she had used marijuana before the assault. On cross-examination, defense counsel asked whether she had been in a drug rehabilitation program prior to the attack, and she responded, "no." She further stated that her employer had never ordered her to enter a rehabilitation program. Moody then tried to introduce a document allegedly showing that her employer had referred her to a drug treatment program. In addition, he sought to introduce a case plan from the Department of Family and Children Services ("DFCS") requiring the victim to seek drug treatment and submit to random drug testing.

The trial court initially ruled the employer's document admissible, but after reviewing the form, determined that it could not be admitted without explanation as to what the form meant. Moody offered no evidence explaining the document, and the trial court excluded it. The court obviously found that the tendered document would be misleading or confusing without supporting evidence. Accordingly, it did not err in excluding it.[22]

We similarly find no error with respect to the DFCS case plan. The victim admitted that she used marijuana, but testified that she had not been in a rehabilitation program and did not have a substance abuse problem prior to the attack. The trial court concluded that nothing in the DFCS case plan showed this testimony to be false. And it found that whether the victim's drug use might be viewed as a "substance abuse problem" was immaterial to the case. Neither of these findings reveals an abuse of discretion, and the trial court did not err in limiting Moody's cross-examination on this issue.[23]

---

[19] See *Cook v. State*, 221 Ga. App. 831, 834 (4) (472 SE2d 686) (1996).

[20] Id.

[21] See id.; *Gilbert v. State*, 159 Ga. App. 326, 327-328 (2) (283 SE2d 361) (1981).

[22] See *Pickens v. State*, 225 Ga. App. 792, 798 (3) (a) (484 SE2d 731) (1997) ("Absent abuse, it is within the sound discretion of the court to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.") (punctuation omitted).

[23] See *Cook*, supra; *Hartman v. State*, 170 Ga. App. 195, 196 (2) (316 SE2d 820) (1984).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 17, 2006.

*Stanley W. Schoolcraft III*, for appellant.
*Jewel C. Scott, District Attorney, Nicholas Salter, Assistant District Attorney*, for appellee.