A07A0957. PINEDA v. THE STATE.
(651 SE2d 148)

JOHNSON, Presiding Judge.

A jury found Antonio Pineda guilty of the offenses of armed robbery, aggravated assault and making harassing phone calls. The trial judge merged the aggravated assault conviction with the armed robbery conviction and sentenced Pineda to serve 20 years in prison for armed robbery and a concurrent 12 months in prison for making harassing phone calls. Pineda appeals.

Viewed in the light most favorable to the verdict,[1] the evidence presented at trial shows that on September 1, 2002, Nora Angle was driving with her nine-year-old niece to Lake Lanier when Pineda, whom she had been dating for several months, began following them in his car. Pineda forced Angle to pull into a gas station. Pineda then approached Angle's stopped car and pulled the driver's door open. He had a knife in his hand, asked Angle where she thought she was going, said that she had better come back to his apartment and tried to take her car keys. When she would not let him get the keys, he grabbed her neck, brandished the knife and took her purse. Pineda fled, and Angle called the police to report the incident. The police met Angle at the gas station and then went to Pineda's apartment, where they found the knife and Angle's purse, but not Pineda.

That night, Pineda called Angle on the telephone and told her that she was in trouble. He threatened to send someone to kill her and her brother, saying he knew where her brother worked. The police

---

[17] See American Liberty Ins. Co., supra; Sewell Dairy Supply Co., supra.
[1] Wright v. State, 282 Ga. App. 649 (639 SE2d 581) (2006) (on appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict).

were immediately notified of the call, and they subsequently found Pineda at his sister's apartment, hiding in a closet with a loaded gun. They also found Angle's wallet, from which $300 was missing, in Pineda's car.

1. Pineda contends that the trial court erred in allowing his custodial statement to be admitted into evidence because it was not made freely and voluntarily. The contention is without merit.

"In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily."[2] The trial court's determinations as to issues of fact and credibility must be upheld on appeal unless clearly erroneous.[3]

In the instant case, the state did not introduce Pineda's statement in its case-in-chief, and instead sought to introduce it in rebuttal to Pineda's trial testimony. Before admitting the statement, the trial court held a *Jackson-Denno*[4] hearing. At the hearing, a police sergeant testified that Pineda was under arrest when she interviewed him for approximately 30 minutes on September 3, 2002. The sergeant spoke to 24-year-old Pineda, a native of El Salvador, in English. The sergeant testified that Pineda appeared to understand what she was saying and answered appropriately in English. Nevertheless, she had a Spanish interpreter sit in on the interview and translate for Pineda. With the translator present, the sergeant informed Pineda of his *Miranda*[5] rights in English. Pineda was also given a copy of his rights written in Spanish, which he read. Pineda stated that he understood, signed a form waiving his rights and spoke to the officer. The signed statement of rights and waiver was introduced into evidence at the hearing.

Pineda also testified at the *Jackson-Denno* hearing. He admitted that it was explained to him that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to speak with an attorney and have the attorney present with him, and that he could decide at any time to exercise his rights and not answer any questions or make further statements. He further testified that the waiver of rights on the *Miranda* rights form was read to him. That waiver indicates that he had read the statement of his rights, understood them, and was willing to give them up and make a statement. Pineda claimed, however, that no one told him

---

[2] (Citation and punctuation omitted.) *Collins v. State*, 273 Ga. App. 598, 599 (1) (615 SE2d 646) (2005).

[3] *Nguyen v. State*, 273 Ga. 389, 395 (2) (b) (543 SE2d 5) (2001); *Collins*, supra.

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[5] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

he could get a lawyer even if he did not have any money and that he was not given a Spanish version of his rights.

The officer's interview of Pineda was videotaped, and the trial court watched the tape. Based on that tape and the testimony of the witnesses, the trial court found that Pineda was fully informed of his rights in English, that he was given a copy of his rights in Spanish and studied them, that at least twice he indicated he understood his rights and that he signed the rights document. The trial court further found that Pineda was not threatened or promised any hope of benefit in exchange for his statement. The trial court concluded that Pineda's statement was voluntary.

Because there is evidence supporting the trial court's findings of fact, those findings are not clearly erroneous and must be upheld.[6] Based on the totality of the circumstances, we conclude that Pineda's statement was made knowingly and voluntarily, and the trial court thus did not err in admitting it into evidence.[7]

2. Pineda argues that the trial court erred in allowing a translator to become an opinion witness against him during the *Jackson-Denno* hearing. At the hearing, when the videotape of the police interview of Pineda was played, a translator interpreted the Spanish portions of the tape for the court. Thereafter, the court asked if the translator had heard anything on the tape that was a threat or promise of benefit to Pineda. The translator said, "Absolutely not." Pineda claims that it was improper for the translator to opine as to whether there were threats or promises.

To secure reversal, an objector must establish error, contemporaneous objection and harm flowing from the error.[8] The failure to make a contemporaneous objection on the ground urged on appeal results in waiver.[9] The record reveals that Pineda did not object to the translator's testimony on any ground, let alone the ground of improper opinion now urged on appeal. Because Pineda failed to make a contemporaneous objection to the translator's testimony, he may not raise an objection to it for the first time on appeal.[10]

Moreover, contrary to Pineda's contentions, it does not appear that the trial court based its ruling on the translator's allegedly improper statement about whether there had been threats or promises made. Rather, the court stated that it was basing its finding on what it had seen and heard on the videotape. Because the videotape, as well as the interviewing officer's testimony, provided evidence of no

---

[6] See *Kunis v. State*, 238 Ga. App. 323, 324 (1) (518 SE2d 725) (1999).

[7] See *Simon v. State*, 279 Ga. App. 844, 847 (1) (632 SE2d 723) (2006).

[8] *Moody v. State*, 279 Ga. App. 440, 444 (4) (631 SE2d 485) (2006).

[9] Id.

[10] *Tate v. State*, 253 Ga. App. 723, 724 (1) (560 SE2d 303) (2002).

promises or threats, the translator's cumulative testimony on that issue was harmless and provides no basis for reversal.[11]

3. Pineda complains that the trial court erred in admitting evidence of prior difficulties between himself and Angle.

> Evidence of prior difficulties between a defendant and a victim is generally admissible when the crime charged was perpetrated against the victim and the evidence demonstrates: (1) the relationship between the defendant and victim, and (2) the defendant's motive, intent or bent of mind.[12]

In the instant case, the victim testified about various prior difficulties between herself and Pineda, including incidents when he did not let her leave his apartment and verbally and physically abused her. She testified that, among other things, he had accused her of having relationships with other men and had punched her, kicked her, choked her, tied her up, threatened to kill her and put a gun to her head. The trial court properly admitted this evidence of prior difficulties because it demonstrated the relationship between Pineda and Angle, as well as his intent, motive and bent of mind in committing the aggravated assault, armed robbery and harassing phone calls charged in this case.[13]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 10, 2007.

*Novy, Jaymes & Vaughan, Deborah M. Vaughan*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

---

[11] *Moody*, supra.
[12] (Citation and punctuation omitted.) *Brogdon v. State*, 270 Ga. App. 568 (1) (607 SE2d 199) (2004).
[13] Id.