S11A1281. MILINAVICIUS v. THE STATE.
(721 SE2d 843)

BENHAM, Justice.

On July 26, 2007, the police were called to the business of appellant Rolandas Milinavicius in East Point (Fulton County), Georgia. Inside the building, authorities found the bodies of Ms. Inga Contreras and Mr. Martynas Simokaitis, who were both employees of appellant.[1] Both victims were shot in the head. In addition, Mr. Simokaitis had eight bullet wounds to his body. Several projectiles and casings were located at the scene and were determined to have been shot from the same .9mm caliber weapon. The authorities obtained a search warrant which allowed them to confiscate the video surveillance tape of the building. On the day the bodies were discovered, the video surveillance tape showed appellant and the two victims entering the building, but only showed appellant exiting. When appellant last exited the building, he drove away in Ms. Contreras's vehicle. Upon leaving his workplace, appellant met his wife and son and took his son home. He instructed his wife to check things out at his office and, if necessary, to call the police. Appellant then drove to Lake Lanier and camped in the woods. On July 27, 2007, authorities discovered Ms. Contreras's vehicle near Lake Lanier and, close by, they also discovered shoes which were similar to those worn by appellant in the surveillance video. Police interviewed

---

[1] On October 26, 2007, a Fulton County grand jury indicted appellant for two counts each of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. The trial took place before a jury from November 18, 2008, to November 21, 2008, and the jury returned a verdict of guilty on all charges. The trial court sentenced appellant to two consecutive life sentences for malice murder and five years (suspended) for each count of possession. The aggravated assault convictions merged and the felony murder convictions were vacated as a matter of law. Appellant moved for a new trial on December 1, 2008, and, after several amendments to the motion for new trial, hearings were held on October 25, 2010, November 22, 2010, and January 18, 2011. The motion for new trial was denied on March 9, 2011, and appellant timely filed a notice of appeal on March 17, 2011. The case was docketed to this Court, was assigned to the September 2011 term, and was orally argued on September 19, 2011.

appellant's friend who reported to police that appellant contacted him after the shootings and told the friend that he "did it." The State also proffered some evidence that appellant was in debt and the victims had recently requested money from him.[2] Two days after the shootings, on July 28, 2007, appellant turned himself in to police.

At trial, appellant took the stand and asserted a claim of self-defense. Specifically, appellant testified that, on the day in question, Mr. Simokaitis shot at him twice using a .9mm Smith & Wesson handgun that appellant had purchased approximately one month prior to the shootings, but that the shots missed appellant. When the gun jammed, appellant stated he was able to take it away from Mr. Simokaitis. Appellant then followed Mr. Simokaitis to another room where appellant says Mr. Simokaitis punched him and then attacked him with a chair. As Mr. Simokaitis attacked him with a chair, appellant said he shot at the victim multiple times. Appellant did not testify that he shot Ms. Contreras, but implied that she had been shot by Mr. Simokaitis.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that his in-custody statements to police should have been suppressed because his waiver of his *Miranda*[3] rights was not knowing and voluntary due to the fact that he is a Lithuanian immigrant and he did not sufficiently comprehend his interrogators who spoke to him in English and who did not provide an interpreter.[4] In ruling on the admissibility of an in-custody statement, the trial court must look to the totality of the circumstances to decide whether the statement was made freely and voluntarily. *Pineda v. State*, 287 Ga. App. 200 (1) (651 SE2d 148) (2007). The trial court's factual findings and credibility determinations regarding the admissibility of in-custody statements will be upheld on appeal unless clearly erroneous. *Nguyen v. State*, 273 Ga. 389, 395 (543 SE2d 5) (2001). Generally, if there is evidence supporting the trial court's decision to admit statements, it will be upheld on appeal. *Pineda v. State*, 287 Ga. App. at 202.

---

[2] Mr. Simokaitis allegedly requested a change in payment from an hourly wage to a commission-based payment system and Ms. Contreras allegedly requested to borrow $18,000 from appellant.

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[4] At trial, a Russian-English translator was provided to appellant for the purpose of translating the proceedings to appellant from English to Russian and translating appellant's testimony from Russian to English.

At the pre-trial *Jackson-Denno*[5] hearing, appellant proffered a witness who testified that appellant had been in the United States for five years, that appellant only spoke Lithuanian at home and at work, that appellant watched television in Russian rather than in English, and that appellant had the witness interpret for him in English when necessary. The defense also presented an expert who taught English as a second language. She reviewed the videotape of appellant's in-custody interview and testified that she believed appellant did not understand his *Miranda* rights. The police officer who interviewed appellant also testified and stated that he answered all of appellant's questions during the custodial interview, that he read the rights slowly to appellant, that appellant said he understood, and that appellant agreed to talk to authorities without a lawyer. In addition, the trial court was able to view the videotaped interrogation. Based on the evidence presented, the trial court concluded that appellant knowingly and voluntarily waived his *Miranda* rights and, as a result, the videotape of appellant's in-custody interrogation was played to the trial jury over appellant's objection. In its order disposing of appellant's motion for new trial, the trial court held that, in the totality of the circumstances, appellant's custodial statements were admissible.

Since the trial court applied the correct legal standard, appellant is essentially requesting that this Court reject the trial court's findings of fact and credibility determinations. This we cannot do since the trial court's decision was supported by record evidence. Appellant knew enough about American criminal procedure to turn himself in to police. During the interrogation, officers answered appellant's questions and appellant told them that he understood what was being said to him. At no time did appellant invoke his right to silence or right to counsel, but only told authorities he was tired and wanted to see a doctor in order to be medicated for stress. In addition, the trial court, as the factfinder, had the discretion not to credit the opinions of appellant's expert and to weigh her expert opinion less heavily than the police officer's testimony about appellant's waiver of his *Miranda* rights. See *Tate v. State*, 264 Ga. 53 (3) (440 SE2d 646) (1994). The trial court's decision was not clearly erroneous.

3. Appellant complains that his constitutional rights were violated because he was allegedly absent from the courtroom when the attorneys were having a discussion with the judge about the possibility of replacing a juror who had failed to return to complete his service. Appellant admits he was present when the missing juror was

---

[5] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

actually excused by the trial court, but opines that he was not present for the prior discussion about excusing the juror. The trial transcript shows that, on the day in question, the trial court inquired as to whether the appellant was dressed for court[6] and when he confirmed appellant was dressed, the trial court ordered the appellant to be brought into the courtroom. The trial court then discussed with the attorneys the missing juror as well as issues concerning jury instructions. The trial court then took a short recess. At the end of the recess, the trial court announced the substitution of the alternate juror for the missing juror and then appellant immediately took the stand in his own defense. The trial court concluded in its motion for new trial order that appellant was present for the substitution of the missing juror.

The record does not mention the exact moment appellant entered the courtroom between the time the court ordered him to be brought into the courtroom and the time the recess was concluded. The absence of this information, however, does not prove appellant was not in the courtroom at the time discussions were had about the missing juror. We must apply the presumption of regularity and conclude that the trial court conducted the trial properly by making sure appellant was present when necessary. See *Westmoreland v. State*, 287 Ga. 688 (10) (699 SE2d 13) (2010). This enumeration of error provides no basis for reversal.

4. Finally, appellant contends the trial court erred when it failed to include certain language in its charge on justification. The charge given by the trial court was as follows:

> A person is justified in threatening or using force against another person when and to the extent that he reasonably believes that such threat of force is necessary to defend himself against the other person's — the other's imminent use of unlawful force. A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself.

Appellant contends the trial court erred when it left out the words "or to prevent the commission of a forcible felony" at the end of the charge. See OCGA § 16-3-21 (a). Appellant argues this portion of the instruction was important because he alleges Mr. Simokaitis's wielding a chair against him was a forcible felony (i.e., aggravated

---

[6] It appears appellant's court clothes had been misplaced and other clothes had to be found for him.

assault). Inasmuch as the charge as a whole was not an incorrect statement of the law (*Bennett v. State*, 265 Ga. 38 (2) (453 SE2d 458) (1995)) and the charge instructed the jury that appellant was justified in defending himself against the "imminent use of unlawful force" and against "great bodily injury," the trial court's omission of this phrase did not undermine the legal adequacy of the charge. See *Beck v. State*, 211 Ga. App. 125 (3) (b) (438 SE2d 391) (1993). The charge as a whole fairly represented the issue of justification and, therefore, appellant's allegation of error is without merit. *Klinect v. State*, 269 Ga. 570 (9) (501 SE2d 810) (1998).

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., who concurs in judgment only as to Division 2.*

DECIDED JANUARY 23, 2012.

*Brian Steel*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Elizabeth A. Baker, Paige Reese Whitaker, Marc A. Mallon*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Dana E. Weinberger*, Assistant Attorney General, for appellee.