303 Ga. 737
FINAL COPY

S18A0461. SZORCSIKv. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Christopher Szorcsik was found guilty of malice

murder, felony murder, and aggravated assault in connection with the stabbing

death of Richard Bentley.[1] On appeal, Szorcsik contends that the evidence

---

[1] On May 31, 2007, Szorcsik was indicted for malice murder, felony murder predicated on aggravated assault, and aggravated assault. Following a February 24-26, 2009 jury trial, Szorcsik was found guilty on all counts. On March 13, 2009, the trial court entered its February 26, 2009 order sentencing Szorcsik to life imprisonment for malice murder and merging the aggravated assault count into the malice murder count for sentencing purposes. In this same order, the trial court also purported to merge the felony murder count with the malice murder count for purposes of sentencing, but the felony murder count was actually "vacated by operation of law" rather than "merged" with the malice murder count. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Szorcsik filed a motion for new trial on March 31, 2009, which he amended with new counsel on December 21, 2016. Following an August 15, 2017 hearing, the court denied the motion on September 18, 2017. See Owens v. State, 303 Ga. 254, 258 (4) (811 SE2d 420) (2018) (reminding the bench and bar that "[w]e do not condone . . . inordinate delay[s] in . . . motion for new trial proceeding[s]," as such "delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial") (citation and punctuation omitted). Following the payment of costs, Szorcsik's timely appeal was

presented at trial was insufficient to support the verdict; that the trial court erred in denying his motion to suppress certain statements that he made to police; that the trial court committed plain error by failing to instruct the jury on the rule of sequestration and voluntary manslaughter; and that his trial attorneys were ineffective for failing to request a jury charge on voluntary manslaughter. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, on March 4, 2007, Szorcsik was at home with his mother, Charlene, and his stepfather, Bentley. After Charlene smoked some illegal drugs, she got into a physical altercation with Bentley. Szorcsik got involved in the fight, and then Charlene jumped up and grabbed Bentley from behind, which caused her and Bentley to fall to the ground. While Charlene and Bentley were on the ground, Szorcsik retrieved several knives and stabbed Bentley multiple times, killing him. The evidence revealed that Szorcsik stabbed Bentley while using a "juking" motion, moving his hand like a sewing machine, and that he stabbed Bentley so many times that the State's medical examiner

docketed in this Court for the term beginning in December 2017 and submitted for decision on the briefs.

2

found it difficult to count the total number of wounds to Bentley's torso and back.

In the process of stabbing Bentley, Szorcsik cut and injured his own hand, which required him to seek medical treatment. Before seeking such treatment, however, Charlene and Szorcsik wrapped Bentley's body in blankets and hid it under the back porch of their home. Charlene and Szorcsik then called Charlene's ex-husband, Jimmie Earl Miller, and Charlene met with Miller at a Waffle House restaurant to ask him to help her dispose of Bentley's body. Miller agreed to do so, and he and a friend of his named Matt Freeman assisted in digging the grave in the woods where Bentley's body was buried. Freeman overheard Charlene "laughing" as she told Miller about how she and Szorcsik had killed Bentley.

Charlene purchased cleaning supplies and tried to clean up her home to cover up the killing, but police smelled the strong odor of cleaning chemicals when they came to the scene a few days after the murder to do a welfare check on Bentley, and they found traces of blood in the home. Soon thereafter, on March 12, 2007, police took Szorcsik into custody and read him his Miranda rights. Charlene was taken into custody as well, and both she and Szorcsik were

eventually charged with Bentley's murder.

When Szorcsik was initially taken into custody on March 12 and read his Miranda rights, he indicated to GBI Agent Jeff Reed that he did not want to speak with investigators. Accordingly, the investigators did not interview Szorcsik at that time. Four days later, Szorcsik reinitiated contact with law enforcement authorities on his own, saying that he wanted to speak with Sheriff Freddie Tompkins. When Sheriff Tompkins arrived at Szorcsik's request, he did not ask Szorcsik any questions. Instead, Szorcsik stated without prompting that he wanted to take the sheriff to the location where Bentley's body was buried. On the morning of March 17, 2007, Sheriff Tompkins and Agent Reed went with Szorcsik to the area where Szorcsik claimed that Bentley's body was buried, and police found the gravesite later that same day. Agent Reed read Szorcsik the Miranda warnings again, and this time Szorcsik agreed to speak with him, claiming that he had stabbed Bentley in self-defense. Szorcsik maintained his self-defense argument at his 2009 jury trial,[2] but he was nevertheless found guilty by the jury on all counts against him.

---

[2] Because this case was tried before January 1, 2013, the provisions of Georgia's old Evidence Code, rather than our new Evidence Code, apply.

The evidence was sufficient to enable a rational trier of fact to reject Szorcsik's claim that he had been acting in self-defense at the time that he killed Bentley and find him guilty of malice murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also, e.g., Roper v. State, 281 Ga. 878 (1) (644 SE2d 120) (2007) (witness credibility is for jury to decide, as is the question of justification; therefore, jury is free to reject claim that defendant acted in self-defense).

2. Szorcsik contends that the trial court erred in denying his motion to suppress the statements that he made to police on March 16 and 17, 2007, about the whereabouts of Bentley's body and the fact that Szorcsik had stabbed and killed Bentley in self-defense. Szorcsik claims that, because these statements were made after he had already invoked his right to counsel on March 12, the trial court erred by allowing these statements to be admitted into evidence at his trial. We disagree.

> In ruling on the admissibility of an in-custody statement, the trial court must look to the totality of the circumstances to decide whether the statement was made freely and voluntarily. The trial court's factual findings and credibility determinations regarding the admissibility of in-custody statements will be upheld on appeal unless clearly erroneous. Generally, if there is evidence supporting the trial court's decision to admit statements, it will be upheld on

5

appeal.

(Citations and punctuation omitted.) Milinavicius v. State, 290 Ga. 374, 375 (2) (721 SE2d 843) (2012).

While it is true that "an accused, such as [Szorcsik], having expressed his desire to deal with the [law enforcement] only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," the accused can be further interviewed by investigators where, as here, "the accused himself initiates further communication, exchanges, or conversations with the [authorities]." Edwards v. Arizona, 451 U. S. 477, 484-485 (II) (101 SCt 1880, 68 LE2d 378) (1981).  Indeed, after Szorcsik was read the Miranda warnings on March 12 and he invoked his right to counsel, law enforcement officials asked no further questions of him. It was Szorcsik himself who reinitiated further communication with investigators four days later when he summoned Sheriff Tompkins to tell him without any prompting that he wanted to take the sheriff to the place where Bentley's body was buried. Before Szorcsik was asked any additional questions relating to Bentley's death, Agent Reed once again read Szorcsik the Miranda warnings, and Szorcsik agreed to speak with investigators. Agent Reed and Sheriff Tompkins both testified at the

6

Jackson-Denno hearing that Szorcsik was lucid when they dealt with him and that he understood what he was doing. They further testified that they took no action to influence him in any way or to provide him with any hope of benefit if he spoke to them. We find no error in the trial court's conclusion that, under the totality of the circumstances, Szorcsik knowingly and voluntarily waived his previously invoked right to counsel after choosing to reinitiate communication with law enforcement officials. See, e.g., Short v. State, 256 Ga. 165 (3) (345 SE2d 340) (1986).

3. Szorcsik asserts that the trial court committed plain error by failing, sua sponte, to give a jury charge on the rule of sequestration. See former OCGA § 24-9-61 ("Except as otherwise provided in [former] Code Section 24-9-61.1 [relating to crime victims being present in court], in all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other[.]"). See also OCGA § 17-8-58 (b) ("Failure to object [to a portion of a jury charge] shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention [through a specific

7

objection] as provided in . . . this Code section."); <u>State v. Kelly</u>, 290 Ga. 29 (1) (718 SE2d 232) (2011). Szorcsik argues that, because Sheriff Tompkins was allowed to remain in the courtroom during the testimony of other witnesses, the trial court was required to give an instruction to the jury about the rule of sequestration, which generally would not allow for the other witnesses to remain in the courtroom to hear the testimony of others. We disagree.

> In order to show plain error:

> First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Citation, punctuation and emphasis omitted.) <u>Kelly</u>, supra, 290 Ga. at 33 (2) (a).

Again, the rule of sequestration pursuant to former OCGA § 24-9-61 provides that, "[e]xcept as otherwise provided in [former] Code Section 24-9-61.1 [relating to crime victims being present in court], in all cases either party shall have the right to have the witnesses of the other party examined out

of the hearing of each other[.]" However, with respect to Sheriff Tompkins, the trial court committed no error by allowing him to remain in the courtroom during the testimony of other witnesses. In this regard, "[i]t has been repeatedly held that it is within the discretion of the trial judge to permit a witness to remain in the courtroom to assist either the State or the accused." (Citation and punctuation omitted.) Moon v. State, 258 Ga. 748, 757 (24) (375 SE2d 442) (1988). Noting that Sheriff Tompkins was listed as a witness for both the defense and the prosecution, and citing security issues in the courtroom on the day of trial, the trial court properly allowed Sheriff Tompkins to be exempted from the rule of sequestration. In other words, the rule of sequestration did not apply to exclude Sheriff Tompkins from the courtroom. See, e.g., O'Dillon v. State, 245 Ga. 342, 343 (1) (a) (265 SE2d 18) (1980) (trial court did not abuse its discretion in allowing, on its own motion, sheriff to remain in courtroom and testify after hearing eleven other witnesses testify, where sheriff was there to "'assist the court and for security reasons'").

In this regard, a jury charge on the credibility of Sheriff Tompkins' testimony as it relates to the rule of sequestration was unnecessary here, as such a charge may be requested when the rule has been invoked and *violated*, rather

than in a situation where, as here, the rule does not apply. Indeed,

> [w]hen the rule of sequestration is *violated*, the violation goes to the credibility rather than the admissibility of the witness' testimony. Moore v. State, 255 Ga. 519, 521-522 (3) (340 SE2d 888) (1986); Blanchard v. State, 247 Ga. 415, 416-417 (1) (276 SE2d 593) (1981). A party's remedy for a violation of the rule is to request the trial court to charge the jury that the violation should be considered in determining the weight and credit to be given the testimony of the witness. Jordan v. State, 247 Ga. 328, 346-347 (10) (276 SE2d 224) (1981).

(Emphasis supplied.) Johnson v. State, 258 Ga. 856, 857-858 (4) (376 SE2d 356) (1989).

We find no error, plain or otherwise, in the trial court's failure to give a jury charge on the rule of sequestration.

4. Szorcsik also argues that the trial court committed plain error by failing, again sua sponte, to give a jury charge on voluntary manslaughter. However, we need not reach the merits of this claim, as the record reveals that Szorcsik affirmatively waived this argument for purposes of his appeal. More specifically, when the trial court discussed giving a charge on voluntary manslaughter below, Szorcsik's defense team indicated that they "did not want that [charge] given to the jury." Under such circumstances, Szorcsik's claim of plain error from the trial court's failure to give a charge on voluntary

10

manslaughter is not subject to review here. See Shaw v. State, 292 Ga. 871, 873 (2) n.3 (742 SE2d 707) (2013).

5. Finally, Szorcsik contends that his trial attorneys were ineffective for failing to request a jury charge on voluntary manslaughter. Szorcsik is incorrect.

> In order to succeed on his claim of ineffective assistance, [Szorcsik] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

At the motion for new trial hearing, trial counsel testified that, based on counsel's "self-defense [strategy at trial] and . . . discussion with [Szorcsik], [they] were all in agreement not to request the charge of voluntary manslaughter." Counsel was free to pursue an all-or-nothing strategy focused on self-defense after consulting with Szorcsik, and the failure to request a jury charge on voluntary manslaughter under such circumstances does not amount

to deficient performance. See <u>Van Alstine v. State</u>, 263 Ga. 1 (426 SE2d 360)

(1993). Indeed,

> [w]hile other counsel, had they represented appellant, may have exercised different judgment, the fact that the trial counsel chose to try the case in the manner in which it was tried and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel. [Cit.]

<u>Solomon v. State</u>, 247 Ga. 27, 29 (277 SE2d 1) (1981). Szorcsik's claim of

ineffective assistance is without merit.

<u>Judgment affirmed. All the Justices concur.</u>

Decided May 21, 2018.

Murder. Worth Superior Court. Before Judge Cross.

Troy E. Golden, John R. Mobley II, John G. Wolinski, for appellant.

C. Paul Bowden, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.