**FIRST DIVISION**
**PHIPPS, P. J.,**
**BOGGS and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 25, 2016**

# In the Court of Appeals of Georgia

A15A2007. GOODRUM v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Jonquae Rique Goodrum guilty of aggravated assault. Goodrum filed a motion for new trial, which the trial court denied. He now appeals, challenging the sufficiency of the evidence, the wording of his indictment, and the effectiveness of trial counsel. For reasons that follow, we affirm.

1. When reviewing a challenge to the sufficiency of the evidence, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or resolve issues

---

[1] *Hall v. State*, 292 Ga. App. 544, 545 (644 SE2d 882) (2008).

of witness credibility, but merely determine whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt.[2]

So viewed, the evidence shows that Goodrum and the victim dated for a few weeks in late December 2012 and early January 2013. After they ended their relationship, the victim often found Goodrum waiting for her outside her home. On these occasions, Goodrum acted aggressively towards the victim, chasing her, threatening her, and banging on her doors and windows.

On the evening of January 23, 2013, the victim received numerous calls and text messages from Goodrum, which she did not answer. At approximately 11:00 p.m., Goodrum texted her that he would kill himself if she did not respond to him. The victim wrote back, asking if he needed her to call someone to help him. She then went to sleep. Shortly after midnight, Goodrum kicked in the door to her home. The victim awoke and immediately called 911. While the 911 operator was still on the line, Goodrum jumped on the victim and began choking her with his hands, making it difficult for her to breathe.

Two officers responded to the 911 call. As they arrived, they heard the victim scream and observed that the front door was broken. Inside, they found Goodrum

_____

[2] Id.

2

with his hands wrapped around the victim's throat. One of the officers pulled Goodrum off the victim, who was gasping for air, and arrested him. Following the incident, the victim had red marks on her neck where Goodrum's hands had been.

An assault occurs when someone attempts to violently injure another person or commits an act that places another in reasonable apprehension of immediate violent injury.[3] An assault becomes aggravated if it is carried out "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[4] As we have held, the use of hands to choke a victim can satisfy the deadly weapon or dangerous object element of aggravated assault.[5] Whether the use of hands rises to this level is a question for the jury.[6]

The evidence shows that Goodrum jumped on top of the victim and choked her with his hands until a police officer pulled him off of her. At the time, she was

---

[3] OCGA § 16-5-20 (a).

[4] OCGA § 16-5-21 (a) (2) (2013). Although the aggravated assault statute was amended effective July 1, 2014, the prior version applies to the offense at issue here. See *Gipson v. State*, 332 Ga. App. 309, 312 (1) n. 2 (772 SE2d 402) (2015).

[5] *Hall*, supra at 546-547 (1).

[6] *Richards v. State*, 222 Ga. App. 853, 854 (1) (a) (476 SE2d 598) (1996).

3

gasping for breath, and the pressure around her throat left red marks. Under these circumstances, the jury was authorized to find that Goodrum committed aggravated assault by using his hands as a deadly weapon or object likely to result in serious bodily injury.[7] The evidence, therefore, was sufficient to support his aggravated assault conviction.

2. Goodrum contends that he should not have been indicted for aggravated assault because the statutory language in effect at the time of his 2013 offense did not prohibit "choking." In 2014, the Legislature amended OCGA § 16-5-21 to specifically provide that aggravated assault occurs when a person assaults "[w]ith any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation."[8] The former version of the statute contained no reference to strangulation.[9] But this does not mean that prior to 2014,

---

[7] See *Whitley v. State*, 307 Ga. App. 553, 555-557 (707 SE2d 375) (2011) (choking with hands authorized aggravated assault conviction); *Hall*, supra at 547 (1) (aggravated assault conviction supported by victim's testimony that defendant strangled her with one hand while placing the other hand over her mouth and nose); *Richards*, supra (evidence that defendant choked victim with hands until she passed out supported guilty verdict on aggravated assault charge).

[8] OCGA § 16-5-21 (b) (3).

[9] See OCGA § 16-5-21 (a) (2) (2013).

4

choking or strangulation could not support an aggravated assault conviction. On the contrary, we consistently held the opposite.[10]

Goodrum also argues that because his indictment mentioned "choking," the jury was unable to find him guilty of any lesser included offense. We disagree. The indictment charged that Goodrum committed aggravated assault "with [his] hands, an object which when used offensively against a person is likely to result in serious bodily injury by choking said person." The trial court read the indictment to the jury. It then defined aggravated assault, extensively discussing the necessary elements of the crime. It further instructed the jury on the lesser offenses of simple assault and battery.

Fully apprised of its options, the jury could have determined that Goodrum was guilty only of a lesser offense. It did not do so, however, and the evidence supported its conclusion that Goodrum committed aggravated assault. Accordingly, he is not entitled to reversal on this ground.[11]

---

[10] See, e.g., *Whitley*, supra; *Hall*, supra; *Richards*, supra.

[11] See *Smith v. State*, 226 Ga. App. 150, 151 (2) (485 SE2d 538) (1997) (where evidence supported finding of guilt on crime charged, jury authorized to reject option of convicting on lesser included offense).

3. Finally, Goodrum asserts that he received ineffective assistance of counsel at trial. To prevail on this claim, Goodrum must show that trial counsel's performance was deficient and that, but for the deficiency, "there is a reasonable probability that the outcome of the trial would have been more favorable to him."[12] This showing requires Goodrum to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional conduct.[13]

(a) Goodrum first argues that trial counsel posed inappropriate questions during voir dire. Specifically, the record shows that counsel asked a potential juror for detailed information about a prior experience with domestic violence. The prosecutor interrupted the questioning, requested a bench conference, and stated: "I just don't know that we need to go into this much detail." The trial court agreed, noting: "I think you run the risk of possibly influencing the other members of the panel when you start getting into that much detail." Defense counsel explained that he wanted to explore whether the individual had a past experience that might keep him from being a proper juror. The trial court, however, restricted counsel's line of inquiry to avoid the "very real risk" of tainting the pool, and counsel lodged an objection "to not being

_____

[12] *Benson v. State*, 294 Ga. 618, 622 (3) (754 SE2d 23) (2014).

[13] See *Leon v. State*, 237 Ga. App. 99, 105 (4) (513 SE2d 227) (1999).

allowed to go into full details." When voir dire resumed, the trial court again admonished counsel not to bring out details of any prospective juror's experience with domestic violence.

According to Goodrum, trial counsel "conducted voir dire in a manner that tainted the jury pool." But counsel's decision regarding how to question potential jurors was clearly a matter of trial strategy. And matters of reasonable trial strategy "do not equate with ineffective assistance of counsel."[14] Moreover, even if counsel's methods were not reasonable, Goodrum has offered no evidence that those methods actually impacted the trial or prejudiced him in any way.[15] The trial court, therefore, properly rejected this ineffective assistance claim.

(b) Goodrum also contends that he is entitled to a new trial because counsel failed to subpoena to trial an individual named "Kenneth," who allegedly witnessed his altercation with the victim. Goodrum, however, did not call "Kenneth" as a witness at the hearing on his motion for new trial, and he provided no other evidence

---

[14] Id. (citation and punctuation omitted); see also *Morgan v. State*, 276 Ga. 72, 77 (9) (575 SE2d 468) (2003) ("The content of trial counsel's voir dire of the jury venire can be a matter of trial strategy.").

[15] See *Benson*, supra at 622 (3) (a) (ineffective assistance claim failed where defendant demonstrated no reasonable probability that counsel's allegedly deficient performance during voir dire impacted trial).

as to what this individual's testimony might have been. He thus cannot demonstrate that counsel's failure to present the testimony at trial prejudiced him.[16]

(c) Goodrum asserts – without any supporting argument – that trial counsel did not adequately prepare him for trial. Counsel testified, however, that he met with Goodrum several times, including one long initial interview, and they discussed "every aspect of the case." Goodrum claimed at the new trial hearing that he asked counsel for more meetings. But he offered no insight into what additional steps counsel should have taken to prepare him for trial, and he demonstrated no reasonable probability that the trial outcome would have changed had counsel acted differently. Accordingly, the trial court properly rejected this claim.[17]

---

[16] See *Boatwright v. State*, 281 Ga. App. 560, 561-562 (2) (636 SE2d 719) (2006) (defendant cannot demonstrate that trial counsel's failure to subpoena witness to trial prejudiced him unless he calls witness to testify at new trial hearing or otherwise proves what trial testimony would have been).

[17] See *Williams v. State*, 281 Ga. 196, 196-197 (637 SE2d 25) (2006) (trial court did not err in rejecting deficient trial preparation claim where evidence showed, among other things, that counsel met with defendant several times before trial to discuss evidence); *Hinkle v. State*, 282 Ga. App. 328, 329 (2) (638 SE2d 781) (2006) (no ineffective assistance when defendant "fails to indicate what other steps counsel might have taken or how such additional preparation would have altered the outcome of the trial").

(d) Finally, Goodrum contends that counsel should have challenged his indictment because the act of "choking" did not give rise to aggravated assault at the time of the offense. As discussed in Division 2, however, even before the legislature amended OCGA § 16-5-21 in 2014, using hands to choke a victim could support an aggravated assault conviction. Trial counsel was not ineffective in failing to pursue this meritless argument.[18]

*Judgment affirmed. Boggs and Mercier, JJ., concur.*

---

[18] See *Trimble v. State*, 297 Ga. 180, 183 (5) (b) (773 SE2d 188) (2015) ("[T]rial counsel cannot be held ineffective for failing to pursue a meritless motion.").