**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2024**

# In the Court of Appeals of Georgia

A24A0358. ANDERSON v. THE STATE.

DILLARD, Presiding Judge.

Following a trial by jury, Patrick Anderson was convicted of rape, aggravated sodomy, kidnapping, and aggravated assault. Anderson appeals these convictions, arguing (1) he was denied the right to a fair and impartial jury, (2) his counsel rendered ineffective assistance, and (3) the evidence is insufficient to sustain his conviction for rape, which merged for sentencing with the aggravated-assault count. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record shows that in the early morning of September 15, 2020, the victim saw Anderson—who was wearing a surgical mask[2]—speaking with a neighbor from her apartment building. When the victim entered her car, Anderson approached the vehicle requesting to use her phone. She said no. Anderson then tried to open the door to the victim's car, but she locked it; and so he went away.

The victim then realized she did not have her phone with her, so she went back to her apartment and retrieved it from the kitchen counter. When she returned to her vehicle, the victim did not see Anderson around; but as she got inside, Anderson opened the rear passenger-side door, got into the backseat, and revealed a knife. The victim, who was in shock, screamed and demanded that Anderson leave. But Anderson—who was still holding the knife—told the victim he needed to "get to a friend's house" and said that if she helped him, he would get out of the car. The

---

[1] *See, e.g.*, *Williams v. State*, 333 Ga. App. 879, 879 (777 SE2d 711) (2015) ("On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (punctuation omitted)).

[2] The events in question occurred during the COVID-19 pandemic when many people wore such masks in public.

victim then began driving as Anderson instructed. She planned to immediately exit the vehicle when it stopped in a public area; but this plan was thwarted when Anderson suddenly indicated that he had a friend in the apartment complex and told her to stop there.

Once the victim stopped the vehicle, Anderson moved up to the front-passenger seat with the knife still in hand. And because he was now so close to her with the weapon, the victim did not believe she could leave the car without Anderson stabbing her; and she could not reach the phone in her pocket. At that point, Anderson ordered the victim to disrobe despite her pleas not to do so. Anderson then forced the victim to perform oral sex before pulling her on top of him and proceeding to forcibly insert his penis into her vagina.

While Anderson was distracted, the victim managed to call 911 from her smart watch. And when Anderson heard the emergency responder pick up, he panicked and snatched the watch from the victim's wrist. A car then pulled up next to the victim's vehicle, and Anderson told her to freeze. The victim tried to signal her distress with her face, and the other driver looked her way but then proceeded into his apartment.

3

Anderson then realized he could not find his knife, left the vehicle in panic, taking the victim's keys and watch. The victim then called 911 from her phone.

Law enforcement located Anderson's knife in the backseat of the victim's car. They also identified fingerprints on the right rear passenger-side door as belonging to Anderson. Finally, the results of a sexual-assault examination revealed the presence of Anderson's DNA. Based on this and the other evidence, the jury ultimately convicted Anderson of the foregoing offenses, but acquitted him on a charge of aggravated robbery. Anderson's motion for new trial was denied, and this appeal follows.

1. Anderson first argues that his right to a trial conducted by a fair and impartial jury was violated when the trial court failed to take appropriate actions in response to a prospective juror who said "he did it" in front of other prospective jurors, some of whom ended up on the jury. But Anderson affirmatively waived any challenge to the trial court's handling of this matter.

Just prior to jury selection, the jury clerk informed the trial judge that Juror 28 reported overhearing Juror 25 tell other jurors that "he did it," potentially indicating that Juror 25 believed Anderson committed the alleged offenses. The court then

relayed this information to the parties and asked how they would like to handle the matter.

Anderson's counsel proposed either bringing Juror 25 back the next day for questioning or simply striking Juror 25 from the pool without further inquiry. The State agreed to removing Juror 25. At that point, Juror 28—who reported the comment—had already been struck for cause. The trial court then asked if the parties would like to bring back any of the other potential jurors for questioning. Anderson's counsel said he did not. As a result, Anderson affirmatively waived any error in the trial court's handling of this incident.[3]

2. Next, Anderson argues his trial counsel rendered ineffective assistance by failing to (a) ensure the trial was not tainted by Juror 25's comment, and (b) object to irrelevant and prejudicial evidence contained within a 911 call made by the victim's neighbor. We disagree.

---

[3] *See, e.g.*, *Grullon v. State*, 313 Ga. 40, 46 (2) (867 SE2d 95) (2021) ("Under the plain error analysis . . . , an objection is intentionally relinquished or abandoned if it is 'affirmatively waived.'"); *Robinson v. State*, 299 Ga. 648, 651 (3) (791 SE2d 13) (2016) (explaining that acquiescing in trial court's action by voicing satisfaction with same waives any asserted error).

In order to establish that trial counsel rendered ineffective assistance, Anderson must show counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[4] Importantly, should Anderson "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[5]

There is a strong presumption trial counsel's conduct falls within the broad range of reasonable professional conduct, which a criminal defendant must overcome.[6] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[7] And decisions regarding trial tactics and strategy may form the basis for an

---

[4] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[5] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[6] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[7] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[8] So, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[9] With these guiding principles in mind, we turn to Anderson's specific claims of error.

(a) *Failure to ensure the trial was not tainted by Juror 25's comment.* As discussed in Division 1 *supra*, trial counsel elected not to further question prospective jurors who were on the panel with Juror 25 because he did not want to draw further attention to Juror 25's comment. Indeed, according to trial counsel, at that point the jury had not yet been sworn in, there had been no opening statements, and there had been no charges from the court. And all of this caused counsel to question whether Juror 25's

---

[8] *Id.*

[9] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018), *disapproved of on other grounds by Hill v. State*, 360 Ga. App. 143, 146 n.4 (860 SE2d 893) (2021); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

statement was even made in reference to Anderson—resulting in this strategic decision. Trial counsel also feared that questioning the other jurors would end up placing that "potential statement under a magnifying glass." Indeed, in his view, Anderson had an "uphill run anyway with the facts that were going to come in," so he was "hypersensitive" about further agitating the situation. Finally, and importantly, trial counsel was pleased with the existing jury pool.

Needless to say, whether to ask follow-up questions during *voir dire* is a pure matter of trial strategy, and the desire to avoid drawing further attention to Juror 25's comment through additional questioning was not an unreasonable strategy under the circumstances.[10] And even if trial counsel's strategy *was* unreasonable, Anderson has not shown the failure to question the other jurors impacted the trial or prejudiced him in any way. Indeed, Anderson did not call members of the panel to testify as to

---

[10] *See Ford v. State*, 298 Ga. 560, 566 (8) (a) (783 SE2d 906) (2016) (explaining in case in which counsel was alleged to have performed deficiently by failing to ask potential jurors follow-up questions about bias that "[t]he conduct of voir dire can be a matter of trial strategy and does not necessarily establish ineffective assistance" (punctuation omitted)); *Goodrum v. State*, 335 Ga. App. 831, 833 (3) (a) (783 SE2d 354) (2016) ("[C]ounsel's decision regarding how to question potential jurors was clearly a matter of trial strategy. And matters of reasonable trial strategy do not equate with ineffective assistance of counsel." (punctuation omitted)).

whether they heard Juror 25's comment and, if so, whether the comment impacted their verdict.[11] Accordingly, this enumeration is without merit.

(b) *Failure to object to irrelevant and prejudicial evidence contained within a 911 call made by the victim's neighbor.* During trial, the jurors were presented with an emergency call made by the neighbor the victim saw speaking to Anderson. This call begins with the neighbor explaining that she was about to call 911 after Anderson attempted to forcibly enter her apartment, but then Anderson entered the backseat of the victim's car, the victim began screaming, and the car left. As a result, the neighbor was calling to seek help for the victim.

The neighbor was unavailable to testify at trial, and trial counsel objected to including the first portion of the 911 recording on Confrontation Clause grounds.[12]

---

[11] *See Anderson v. State*, 309 Ga. 618, 629 (5) (b) (847 SE2d 572) (2020) (explaining that appellant "did not call Juror 13 to testify at his motion for new trial hearing, and, as a result, he has presented no actual evidence that Juror 13 either harbored any bias at all or that [appellant] was harmed in any other way by Juror 13's participation in his trial," and thus appellant failed to show trial counsel rendered ineffective assistance of counsel that warranted the grant of a new trial); *Goodrum*, 335 Ga. App. at 833-34 (3) (a) (explaining that "even if counsel's methods [for questioning potential jurors] were not reasonable, [appellant] has offered no evidence that those methods actually impacted the trial or prejudiced him in any way").

[12] The court's denial of this objection is not at issue on appeal.

Counsel then testified at the motion-for-new-trial hearing that he believed this objection was sufficient. So, he did not lodge a separate objection claiming that the recording also introduced irrelevant, prejudicial evidence when the caller not only mentioned Anderson entered the victim's backseat but also previously attempted to enter her apartment. Anderson argues the failure to make such an objection rendered trial counsel's assistance deficient.

Under OCGA § 24-4-401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." But under OCGA § 24–4-403 ("Rule 403"), relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[13] Nevertheless, as our Supreme Court has explained, "the exclusion of evidence under Rule 403 is an

---

[13] *See* Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 96 (5th ed. 2016) ("Under Rule 403, the term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. The prejudice referenced in Rule 403 addresses prejudice to the integrity of the trial process, not prejudice to a particular party or witness." (citation omitted)).

extraordinary remedy that should be used only sparingly."[14] Here, Anderson not only argues the first portion of the 911 call was irrelevant but that, even if it was relevant, its probative value was substantially outweighed by the danger of unfair prejudice; and, as a result, his trial counsel was ineffective by failing to make additional objections on these grounds.

The failure to make a meritless objection is, of course, not ineffective assistance of counsel.[15] And here, an objection on the grounds asserted by Anderson would have failed. Indeed, Anderson testified at trial that his encounter with the victim was consensual and the two planned the encounter after meeting through a dating app. Accordingly, the portion of the 911 call mentioning Anderson's attempt to forcibly enter the caller's apartment *before* pursuing the victim was relevant to rebutting the assertion that he was at the apartment complex for a previously planned encounter

---

[14] *Carter v. State*, 317 Ga. 689, 693 (2) (895 SE2d 295) (2023) (punctuation omitted).

[15] *See Hampton v. State*, 282 Ga. 490, 492 (2) (a) (651 SE2d 698) (2007) (holding that trial counsel's failure to raise a meritless objection does not constitute deficient performance and causes no prejudice).

with the victim, and its probative value was not substantially outweighed by unfair prejudice.[16] This enumeration of error, then, likewise lacks merit.

3. Finally, Anderson argues there was insufficient evidence to support his conviction for rape. But he abandoned this contention by failing to provide citations to or discussion of legal authority beyond an assertion of the State's burden of proof and that the claim of error is "automatically preserved for review by this Court." As we have previously explained, "mere conclusory statements are not the type of meaningful argument contemplated by our rules."[17] Thus, Anderson abandoned this

---

[16] *See Hughes v. State*, 310 Ga. 453, 459 (3) (851 SE2d 580) (2020) (holding that certain evidence, including a 911 call, was "relevant to the nature and circumstances of the gunfight" and that appellant had not made "any showing that he was unfairly prejudiced by the admission of this evidence"); *Cross v. State*, 354 Ga. App. 355, 363 (2) (b) (839 SE2d 265) (2020) ("[T]he probative value of the other acts was 'great' because the State had a strong need for the evidence to combat [the defendant's] attacks on the victim's credibility and to negate [the defendant's] defense that the encounter was consensual.").

[17] *Brittain v. State*, 329 Ga. App. 689, 691 (766 SE2d 106) (2014) (punctuation omitted); *accord McAllister v. State*, 351 Ga. App. 76, 95 (6) (c) (830 SE2d 443) (2019); *Gunn v. State*, 342 Ga. App. 615, 623-24 (3) (804 SE2d 118) (2017).

contention.[18] But even if he had not done so, the evidence noted above was sufficient to support this conviction.[19]

For all these reasons, we affirm Anderson's convictions.

*Judgment affirmed. Brown, J., and Senior Judge C. Andrew Fuller concur.*

---

[18] *See* Ga. Ct. App. R. 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Fitzpatrick v. State*, 317 Ga. App. 873, 878-79 (3) (733 SE2d 46) (2012) (deeming sufficiency of the evidence argument abandoned when appellant failed to adhere to the predecessor of Rule 25 (d) (1) when appellant's brief contained "no substantive argument or citation to authority related to the sufficiency of the evidence supporting his conviction").

[19] *See, e.g.*, *Pye v. State*, 322 Ga. App. 125, 127 (1) (742 SE2d 770) (2013) ("Despite the lack of physical trauma and [the defendant's] claim that the sexual intercourse was consensual, the evidence was sufficient to find lack of consent based on [the victim's] testimony that she was forced to submit to intercourse against her will."); *Strozier v. State*, 314 Ga. App. 432, 437 (2) (724 SE2d 446) (2012) ("It is well established that a victim's testimony, without more, is sufficient to sustain a conviction for rape." (punctuation omitted)).